## ERIE R. CO. v. SCHMIDT.

(Circuit Court of Appeals, Third Circuit. September 7, 1915.)

No. 1938.

1. COURTS ⬅347 — PLEADINGS — AMENDMENTS — STATUTORY PROVISIONS — STATE AND FEDERAL STATUTES.

Allowance of amendments to pleadings is governed by Rev. St. § 954 (Comp. St. 1913, § 1591), authorizing amendments, and not by state practice act.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. ⬅347.

Federal courts following state practice, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hill, 27 C. C. A. 392.]

2. APPEAL AND ERROR ⬅1041—ALLOWANCE OF AMENDMENTS—HARMLESS ERROR.

Where the trial of an action for the death of a person struck by a train proceeded without objection on the theory that the decedent was at the time of the accident a traveler on the highway, though the statement originally filed alleged that decedent was at that time a passenger, the allowance of an amendment to the statement to conform to the proof was not prejudicial to the railroad company, prepared to meet the question of negligent failure to give statutory signals to decedent as a traveler, relied on as a basis for recovery.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4106-4109; Dec. Dig. ⬅1041.]

3. APPEAL AND ERROR ⬅1002—CONFLICTING EVIDENCE—QUESTION FOR JURY—VERDICT.

A verdict that a railroad company operated a train killing a pedestrian without giving the statutory signals, sustained by the testimony of four witnesses that they did not hear the statutory signals, though in such a position that the jury might reasonably believe that the signals would not have escaped notice, if given, but opposed to much testimony, is conclusive on the court on appeal, unable to say that the trial judge would have been justified in directing the jury to disregard the testimony of the four witnesses.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935-3937; Dec. Dig. ⬅1002.]

4. RAILROADS ⬅350—INJURIES TO PEDESTRIAN ON TRACK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Whether a pedestrian, struck by a train, was guilty of contributory negligence, held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152-1192; Dec. Dig. ⬅350.]

5. RAILROADS ⬅330—INJURIES TO PEDESTRIAN ON TRACK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Under P. L. N. J. 1909, p. 137, providing that, where any railroad installs any safety gates at a street crossing, or places at the crossing a flagman, any person approaching the crossing may assume that the safety gate will be duly operated, or that the flagman will guard the crossing, and that the failure of a pedestrian, injured by a train, to stop, look, and listen before passing, shall not bar an action, where safety gates were down because of the presence of a standing train, from which a passenger alighted, the passenger, on leaving the place and crossing the tracks at a public crossing, could assume that the flagman would properly guard him against another train, and that fact must be considered in determining the issue of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1071-1074; Dec. Dig. ⬅330.]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
225 F.—33

In Error to the District Court of the United States for the District of New Jersey; Thomas G. Haight, Judge.

Action by Blandina Schmidt, administratrix of Lucy Schmidt, deceased, against the Erie Railroad Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

George S. Hobart, of Jersey City, N. J., for plaintiff in error.

Alexander Simpson, of Jersey City, N. J., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges

McPHERSON, Circuit Judge. The plaintiff is the mother and administratrix of Lucy Schmidt, and recovered damages in the District Court for the death of her daughter—a young girl about 16 years old—who was killed on September 4, 1912, by an express train of the Erie Railroad Company on a grade crossing in the borough of Rutherford. The deceased had returned to Rutherford from Jersey City upon a local train, that arrived about half past 5 o'clock in the afternoon. After alighting at the station on the south side of the tracks, she walked westwardly upon the platform until she reached the intersection of Park street with the right of way; at this point she left the premises of the railroad, continued her progress westwardly at least to the middle of the street, then turned northwardly, crossed three tracks, and was struck and instantly killed upon the fourth and last. For the immediate purpose, no other facts need be taken into account; those just stated will make the railroad's first position understood, namely, that the trial judge should not have permitted the plaintiff to amend her statement of claim after all the evidence had been heard.

[1, 2] The ruling was made under the following circumstances: As originally filed, the statement alleged that the deceased was still a passenger at the time of her death; the company's answer disclaimed any knowledge of the subject, and in this state of the pleadings the case went to trial and all the evidence on both sides was taken. The court then ruled that the deceased had lost her status as a passenger at the time of her death, and had become a traveler on the public highway; whereupon the plaintiff asked and obtained leave to make the appropriate amendment, and the defendant duly excepted to the ruling. The amendment was not made until December, 1914, and as the New Jersey statute requires an action for death by negligence to be "commenced within 24 calendar months after the death of such deceased person," [1] the railroad company argued then, and argues now, that the amendment improperly introduced a new cause of action after the statute of limitations had run. We see no error in the allowance of the amendment, but in so holding we give no weight to section 24 of the New Jersey Practice Act of 1912 (P. L. p. 382), which empowers the court "upon terms, [to] permit before or at the trial the statement of a new or different cause of action in the complaint or counterclaim." In our opinion, the amendment was properly allowed under section 954 of the Revised Statutes (Comp. St. 1913, § 1591), which authorizes a federal court to allow either

[1] 2 Comp. St. 1910, p. 1908, § 8.

party to amend at any time "any defect in the process or pleadings upon such conditions as it shall in its discretion and by its rules prescribe." No such allowance should be held erroneous by an appellate court, unless material harm has thereby been done to the opposite party; and in the case now before us the defendant was not prejudiced in the slightest degree, for not only was no further evidence offered, but the notes of testimony show also that the trial had in fact proceeded without objection solely on the theory that the deceased was a traveler on the highway, so that the amendment merely made the record conform to the issue that had actually been contested from first to last. Moreover, the railroad's counsel expressly disclaimed being surprised by the amendment, saying:

"I am perfectly prepared to meet, at this or any other time, the question of the statutory signals to the plaintiff's intestate, as a traveler on the highway."

Under these circumstances, it is unnecessary to decide the formal question, whether the amendment did, or did not, introduce a new cause of action. Upon this question the plaintiff contends that the wrongful act on which the suit is based is the negligence of the defendant in failing to give such signals, either by bell or whistle, as are required by section 35 of the New Jersey act of 1903 (P. L. p. 663); contending, further, that this failure and nothing else was always relied on as the foundation of the claim, thus making immaterial the question whether the deceased suffered death as a passenger or as a traveler on the highway. For the reasons already given, we do not pass upon this contention; the railroad suffered no harm whatever by the amendment, and is in no position to press a purely formal objection.

[3] The next question that needs consideration is whether the evidence of the defendant's negligence should have been submitted to the jury. We need not say that a federal court of appeal does not decide which party has made out the stronger case on the facts. If the evidence for a plaintiff is such that the trial judge is bound to submit it, the verdict is binding in this forum. The remedy against a verdict that does not accord with the weight of the evidence is to move the court below for a new trial, but for some reason no such motion was made in the present case; the defendant chose to rely on its writ of error, and inter alia on the assignment that binding instructions should have been given against the plaintiff. We have read all the testimony with care, and we find that four witnesses testified that they did not hear the statutory signals, each of these witnesses being in such a position that the jury might reasonably believe the signals would not have escaped notice if they had been given. Danskin v. Railroad, 83 N. J. Law, 522, 83 Atl. 1006. It is true that much opposing testimony was offered, but the jury must have believed the four witnesses referred to, and we are unable to say that the trial judge would have been justified in telling the jury to disregard their testimony altogether.

[4] The remaining question has to do with deceased's contributory negligence, and especially with the New Jersey act of 1909 (P. L. p. 137) in its bearing on this subject. Other facts should now be

noticed: The deceased had been a stenographer and bookkeeper in a lawyer's office for nearly three months before her death, and during this period had been accustomed to ride on the same local train that carried her to Rutherford on September 4. She was a bright, intelligent girl, with good sight and hearing. The express train that struck her usually passed the station before the local train came in, but on the day in question it was a few minutes behind its schedule time. There are four tracks at Rutherford, numbered 3, 4, 1, 2, from north to south. The local train arrived on No. 1, and stopped in such a position that the engine occupied at least half of the Park street crossing, which is about 110 feet wide. Safety gates were down on both sides of the crossing, and on the north side a watchman was also on duty. When the deceased left the station platform and stepped upon the stones and planks of the crossing she was inside the gates on the south side, and the standing train prevented her from seeing any danger that might be approaching on tracks 3 or 4. She was familiar with the crossing, which had been in use by the public for 20 years at least, and the jury might reasonably infer that she would not be expecting the express train, since its schedule time would carry it past the station before the local train came in. The engine of her train was exhausting steam and was thus making a certain amount of noise. · When she had passed around the front of the engine, she was only 17½ feet from the first, or south, rail of No. 3 track. The view eastward to her right was unobstructed for more than a mile; in front of her some people were crossing, while the flagman's attention seems to have been engaged in restraining others who were trying to cross in the opposite direction from East Rutherford toward the south, or station, side. At all events, he did not see her; he had signaled the express to come on, and the train passed over the crossing at 20 or 25 miles an hour. How soon the deceased saw the rapidly approaching train after she had walked past the standing engine is in doubt, but of course she must have seen it very soon; the distance was short, and several witnesses testified that she hesitated, or seemed bewildered, then started to run very fast, but failed to get across in time. It must be remembered that the verdict has established the fact that the express did not give the necessary signals, so that she was suddenly confronted by a dangerous situation, brought about by the defendant's negligence.

[5] Under these circumstances we cannot say that her contributory negligence was so clearly established as to require the trial judge to decide the question as a matter of law; but as his instructions on this subject were influenced by the New Jersey statute we are obliged to consider the applicability of that act. It is chapter 96 of 1909, and reads as follows:

"An act with reference to the degree of care necessary to be used by travelers over railroad crossings protected by flagmen or safety appliances or both.

"Be it enacted by the Senate and General Assembly of the State of New Jersey:

"1. Wherever any railroad whose right of way crosses any public street or highway, has or shall install any safety gates, bell or other device designed to protect the traveling public at any crossing or has placed at such crossing a flagman, any person or persons approaching any such crossing so protected

as aforesaid, shall, during such hours as posted notice at such crossings shall specify, be entitled to assume that such safety gate or other warning appliances are in good and proper order, and will be duly and properly operated unless a written notice bearing the inscription 'out of order' be posted in a conspicuous place at such crossing, or that the said flagman will guard said crossing with sufficient care whereby such traveler or travelers will be warned of any danger in passing over said crossing, and in any action, brought for injuries to person or property, or for death caused at any crossing protected as aforesaid, no plaintiff shall be barred of the action because of [the] failure of the person injured or killed to stop, look and listen before passing over said crossing."

This statute has not been construed by the New Jersey courts, and its full meaning may not be entirely free from doubt; but so far as the facts of the present case require us to declare its meaning we think the proper construction is as follows: A railroad company may protect a crossing by a safety device, or by a flagman, or by both these means. If the device is not in order, due notice to that effect must be given; in the absence of such notice, an approaching traveler may assume that the device is in order and will be duly and properly operated. If a flagman is on duty, the traveler may assume that such employé will give sufficient warning of danger. And, if the traveler be nevertheless injured or killed, no action brought for such injury or death shall be defeated by the mere fact that the traveler did not stop, look, and listen. The safety gates play no part in the present controversy; admittedly they were in order and were down, but the fact that they were down did not necessarily mean that a train was approaching on track No. 3; the position of the gates might as properly be referred to the presence of the standing engine on track No. 1. For this reason the learned judge properly confined his instructions to the evidence concerning the flagman, and in effect he submitted to the jury the question whether upon all the evidence the deceased had herself been negligent, and he permitted them to take into account the assumption that the statute allowed her to make from the presence of the flagman. He told the jury distinctly that if the flagman did his duty the statute was not to be considered.

We find no error either in the fact, or in the manner, of such submission. In our opinion, the railroad is mistaken in supposing that the act compels the trial judge to submit to the jury every case of injury or death at a protected grade crossing in New Jersey. The evidence may establish contributory negligence so clearly that the judge would be bound to give the jury binding instructions in favor of the railroad. The act does no more than declare as a rule of evidence that in certain situations the mere fact that the deceased did not stop, look, and listen shall not of itself defeat recovery; but it does not attempt to lay down a rule that every grade crossing case where contributory negligence is alleged must be submitted to a jury. For example: A situation may easily be supposed where the warning of a flagman might be seen and recklessly disregarded, and in such a case the duty of the judge has not been changed by the statute. The Legislature has done nothing more than exercise its conceded power to regulate procedure; it simply provides that a plaintiff is not to be defeated unless more than a specified minimum of evidence be present.

This of course would bind the state courts, and we see no reason why the federal courts in New Jersey should not conform to the same procedure.

In the present case we think the facts recounted above justified the court in submitting to the jury the question of the deceased's contributory negligence, and as already stated we see no error in the manner of submission.

The judgment is affirmed.