## DELAWARE, L. & W. R. CO. v. JAMES.

(Circuit Court of Appeals, Third Circuit. April 9, 1917.)

No. 2211.

1. RAILROADS ⟨KEY⟩307(5)—CROSSING ACCIDENTS—RIGHTS OF TRAVELERS.

P. L. N. J. 1903, p. 673, declares that it shall not be lawful for any person other than those connected with or employed upon the railroad to walk along the tracks of any railroad, except when the same shall be laid upon a public highway, and that if any person shall be injured by an engine or car while walking, standing, or playing on any railroad, such person shall be deemed to have contributed to the injury sustained, and shall not recover therefor any damages, but that the section shall not apply to the crossing of a railroad by any person at any lawful public or private crossing. P. L. N. J. 1909, p. 137, declares that whenever any railroad, whose right of way crosses any public street or highway, has or shall install any safety gates, bell, or other device designed to protect the traveling public at such crossing, or has placed at such crossing a flagman, any person or persons approaching such crossing, so protected, shall during such hours as posted notice at such crossings shall specify, be entitled to assume that such safety gate or other warning appliances are in good and proper order, and will be properly operated, unless a written notice be posted in a conspicuous place, or that the flagman will guard such crossing with sufficient care, whereby travelers will be warned, and that no plaintiff shall be barred because of his failure to stop, look, and listen before passing over such crossing. Plaintiff, who was not employed by a railroad company, entered upon its right of way and proceeded thereon until she reached a public crossing. Held, that while so proceeding on the right of way she was a trespasser, and as, when she reached the crossing, she was within the gates provided for the protection of travelers, she does not fall within the second act.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 976.]

2. RAILROADS ⟨KEY⟩350(28)—CROSSING ACCIDENTS—RIGHTS OF TRAVELERS.

In such case, P. L. N. J. 1909, p. 137, does not necessitate the submission of the action to the jury, where the evidence establishes plaintiff's

---

⟨KEY⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contributory negligence so clearly as to necessitate binding instructions in defendant's favor.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1187.]

3. RAILROADS ☞350(16)—CROSSING ACCIDENTS—JURY QUESTION.

In an action against a railroad company for injuries received by plaintiff while standing on a crossing waiting for a train to pass, evidence *held* insufficient to necessitate the submission of the case to the jury; it appearing that plaintiff had walked up the right of way to the crossing, and then taken a position on the tracks without looking or listening for approaching trains.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1169.]

In Error to the District Court of the United States for the District of New Jersey; J. Warren Davis, Judge.

Action by Daisy B. James against the Delaware, Lackawanna & Western Railroad Company. There was a judgment for plaintiff, and defendant brings error. Reversed.

F. B. Scott, of New York City (M. M. Stallman, of Newark, N. J., of counsel), for plaintiff in error.

Alexander Simpson, of Jersey City, N. J., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case Daisy B. James, a citizen of New York, brought suit in a state court of New Jersey against the Delaware, Lackawanna & Western Railroad Company, a corporate citizen of New Jersey, to recover damages inflicted, by the alleged negligence of said railroad, on her while passing over its tracks at a street crossing. On petition of the railroad the cause was removed to the court below, where it was tried and resulted in a verdict for the plaintiff. On entry of judgment, the defendant sued out this writ, alleging, inter alia, for error the court's refusal to give binding instructions in its favor.

[1] An examination of the proofs satisfies us that this assignment must be sustained. The proofs tended to show the plaintiff, while attempting to pass over the Greenwood avenue crossing of the railroad in Orange, N. J., about 6 o'clock in the evening, June 15, 1915, was struck by a west-bound train just as she stepped on the crossing. Miss James had come to East Orange that morning, and was, when struck, on her way to the Grove street station of the railroad, which was just west of the south side of the crossing. Some 400 feet east of the crossing, Miss James had entered on the railroad's right of way and had walked westwardly alongside of the track. In so walking along the track she was, by the New Jersey statute quoted in the margin,[1]

[1] "It shall not be lawful for any person other than those connected with or employed upon the railroad to walk along the tracks of any railroad except when the same shall be laid upon a public highway; if any person shall be injured by an engine or car while walking, standing or playing on any railroad, or by jumping on or off a car while in motion, such person shall be deemed to have contributed to the injury sustained, and shall not recover therefor any damages from the company owning or operating said railroad: Provided, that this section shall not apply to the crossing of a railroad by any person at any lawful public or private crossing." P. L. 1903, p. 673.

a trespasser. But, while this was her then status, it is clear that, when she left the side path and entered on the street crossing and attempted to cross, she ceased to be a trespasser. Nevertheless, the fact of her prior trespass is not to be overlooked, for by such precedent trespass she was enabled to reach the crossing inside the gates, which she would have had to pass had she come up by a proper approach on Greenwood avenue. It follows, therefore, that by her violation of the statute of New Jersey she brought herself into a position where she had deprived herself of the protection which another statute of New Jersey, also quoted in the margin,[2] was designed to give to those traveling on Greenwood avenue as they approached such crossing. Indeed, it is evident that it was the plaintiff's own trespass, and not the alleged nonclosure of the gates, that brought her inside the gate line.

[2] While the plaintiff testified that the gate was up when she reached the crossing, yet all the witnesses called by her, as well as those called by the defendant, united in testifying the gate was down, and the verdict of the jury to whom the question, "Were the crossing gates down at the time she arrived at the crossing?" was submitted, answered such question, "We are in doubt." The judgment in this case must, irrespective of the position of such gate, therefore, find support from the proofs. In Erie Railroad Co. v. Schmidt, 225 Fed. 513, 140 C. C. A. 655, the last-quoted statute was considered by this court, and we there said:

"In our opinion, the railroad is mistaken in supposing that the act compels the trial judge to submit to the jury every case of injury or death at a protected grade crossing in New Jersey. The evidence may establish contributory negligence so clearly that the judge would be bound to give the jury binding instructions in favor of the railroad. The act does no more than declare as a rule of evidence that in certain situations the mere fact that the deceased did not stop, look, and listen shall not of itself defeat recovery; but it does not attempt to lay down a rule that every grade crossing case where contributory negligence is alleged must be submitted to a jury. * * * The Legislature has done nothing more than exercise its conceded power to regulate procedure; it simply provides that a plaintiff is not to be defeated unless more than a specified minimum of evidence be present."

---

[2] "An act with reference to the degree of care necessary to be used by travelers over railroad crossings protected by flagmen or safety appliances or both.

"Be it enacted by the Senate and General Assembly of the state of New Jersey:

"1. Wherever any railroad whose right of way crosses any public street or highway, has or shall install any safety gates, bell or other device designed to protect the traveling public at any crossing or has placed at such crossing a flagman, any person or persons approaching any such crossing so protected as aforesaid, shall, during such hours as posted notice at such crossings shall specify, be entitled to assume that such safety gate or other warning appliances are in good and proper order, and will be duly and properly operated unless a written notice bearing the inscription 'out of order' be posted in a conspicuous place at such crossing, or that the said flagman will guard said crossing with sufficient care whereby such traveler or travelers will be warned of any danger in passing over said crossing, and in any action, brought for injuries to person or property, or for death caused at any crossing protected as aforesaid, no plaintiff shall be barred of the action because of [the] failure of the person injured or killed to stop, look and listen before passing over said crossing." P. L. 1909, p. 137.

Following this view, we turn to the proofs to ascertain whether they establish the plaintiff's contributory negligence so clearly as necessitated binding instructions in the defendant's favor. In that regard we are clear that the plaintiff's lack of due care under the circumstances not only contributed to, but was the sole cause of, her unfortunate injury, and that she and she alone brought the injury on herself.

[3] As Miss James walked up the track, and before she reached the crossing, she saw an east-bound train approach the Grove street station. Being desirous of taking such a train to New York, to which place she had a return trip ticket, she hurried to the crossing, but when she reached it the train, which was a special, had not stopped at the Grove street station, but was passing over the Greenwood avenue crossing on the south track as Miss James stood on the crossing near the north track.

Referring to this train for New York, the plaintiff's testimony was:

"Q. By the time you got to the crossing, where was it? A. It passed me while I stood on the crossing. Q. Is it not true that engine of the east-bound train was crossing over the crossing at the time you arrived there? A. Well, I was standing there and saw the train go by. I don't remember— Q. You don't remember just which part of it was on the crossing when you got there? A. No. Q. You just remember the fact that the train was passing at the time? A. Yes. Q. So that it is true, is it not, that the train, the east-bound train, was moving over the distance between the station and the crossing before you got to the crossing? A. No. Q. When you first saw the train, it was nearly to the station and going toward New York? A. Yes. Q. And when you got to the crossing it was moving toward the crossing. I am right that far, am I not? A. Not as I got to the crossing. I saw it pulling out of the station, and I stood there and let it pass. Q. You were not able to make the train; that is, it left before you had any opportunity to get onto it, if that was your intention? A. Yes. Q. Were there no gates down for that train? A. No. Q. And the gateman was at the gate box, as I understand you to say? A. At his little house; there is a little house there. Q. There is a gate box on that side of the track, is there not? A. Well, I didn't see that side of the track. Q. That is, the east-bound train was between you and the gateman? A. No—I did not notice whether there was a gate box there. I could not help but see the house. Q. Was there any gates on that side of the track? A. Why, I didn't see them."

Referring to the gates on the north side of the crossing, and to the flagman who was on the south side, her testimony was:

"Q. When you got to the crossing, you walked up the path? A. Up the path. Q. Where did it bring you to? A. To the crossing. Q. What crossing? A. Greenwood avenue. Q. You got on the crossing, did you, then? A. Yes. Q. Were there any gates on the crossing—these gates that go up and down. A. Well, the gates were there, but they were not— Q. I didn't ask you anything about that; I asked you, were the gates there? A. Yes. Q. When you got on the crossing, and went on the crossing, what was the condition of the gates? Were they up or down? A. They were up. Q. Where was the flagman? A. Standing in front of the house opposite. Q. On the other side— that is, the house was on the same side as the east-bound track, was it not? A. Yes. Q. And the flagman was standing in front of the house? A. Yes. Q. About how far away from you? A. Well, the distance across the tracks. Q. How far would you approximate that to be? A. I should think about as far as you are from me, or that wall. Q. Did he do anything or say anything to you? A. No. Q. Or pay any attention to you at all? A. No. Q. How far on the crossing did you go before anything happened; that is, how far towards the station? A. I was just about in the middle of it. Q. In the

middle of the crossing? A. Yes. Q. Then what happened—do you remember? A. No; I don't remember. Q. That is the last thing you remember? A. I was hit. Q. What about the train that was pulling in, what did it do? A. It went past. Q. Were you watching it? A. Yes. Q. As it passed you? A. Yes. Q. While you were watching it, something happened? A. Yes."

From this testimony it is clear that the plaintiff undertook to pass over the crossing while the train for New York was drawing near and passing over the crossing in front of her. It is clear her whole attention was centered on that train, and that she gave no attention whatever to trains approaching in the other direction. There is no proof that she was misled or influenced in any way by the watchman. Nor in the nature of things could she be, for the train passing the crossing to New York would shut off the watchman from her view as it passed. Indeed, the simple fact is that, in the face of this train passing in one direction, which in itself indicated the necessity for care, the plaintiff undertook to cross the tracks without looking out for any other train. This evidenced carelessness, lack of that use of the eyes which the situation demanded; and that such lack of care of the plaintiff contributed to, and indeed caused, the accident are facts and inferences too clear to allow a court to close its eyes to them. Where such is the case, the duty of a court to give binding instructions is imperative.

It follows, therefore, that the assignment of error in question must be sustained, and the judgment entered be reversed.