# CASES AT LAW

# COURT OF ERRORS AND APPEALS

## STATE OF NEW JERSEY

### MARCH TERM, 1918.

---

DAISY B. JAMES, APPELLANT, v. DELAWARE, LACKA-
WANNA AND WESTERN RAILROAD COMPANY, MORRIS
AND ESSEX RAILROAD COMPANY, JAMES F. MOORE
AND JOSEPH I. CASE, RESPONDENTS.

Argued March 12, 1918—Decided June 17, 1918.

1. Whether, when a person who enters upon a railroad company's
   right of way as a trespasser and proceeds along that right of
   way until he reaches a public highway over the railroad, which
   he intends to cross, he then ceases to be a trespasser and be-
   comes a traveler on the highway when crossing the railroad
   tracks thereon, *quære*.
2. The Highway Crossing act of 1909 (*Comp. Stat., p.* 4238, *ch.* 35,
   § 36*a*) is intended for the safety and protection of travelers upon
   the public highway intending to cross over the railroad com-
   pany's right of way and tracks, and not for the benefit of those
   who have gotten upon the right of way and within the safety
   gates without approaching them on the highway.
3. The Highway Crossing act of 1909 (*Comp. Stat., p.* 4238, *ch.* 96,
   § 36*b*) so far as the safety gates feature thereof is concerned, is
   intended for the safety and protection of travelers upon the
   public highway intending to cross over the railroad company's
   right of way and tracks, and not for the benefit of those who
   have gotten upon the right of way and within the safety gates
   without approaching them on the highway.

149

4. The Highway Crossing act of 1910 (*Comp. Stat.*, *p.* 4238, *ch.* 278, § 36c) does not apply in the case of an accident happening upon a railroad crossing where safety gates are installed.

5. Where a person enters upon a railroad company's right of way as a trespasser and proceeds along that right of way until he reaches a highway crossing and then attempts to cross the railroad tracks on the highway and is injured, he is subject to the common law duty of looking and listening, and, if guilty of contributory negligence, is not entitled to recover damages.

6. Contributory negligence is present in a given case when the injured person by his own negligence has contributed to the injury in such a way that, but for his negligence, he would have received no injury from the negligence of the other party.

On appeal from the Supreme Court.

For the appellant, *Alexander Simpson* and *George S. Hobart.*

For the respondents, *Maximilian M. Stallman.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The plaintiff-appellant sued the Delaware, Lackawanna and Western Railroad Company, the Morris and Essex Railroad Company, James F. Moore and Joseph I. Case for damages to herself, resulting from being run down by a train of the Delaware, Lackawanna and Western Railroad Company, lessee of the Morris and Essex Railroad Company, which train was operated by the defendant-respondent James F. Moore, locomotive engineer, the allegation being that the defendant-respondent Joseph I. Case, who was flagman at the crossing where the injury occurred, neglected to close the safety gates at the highway known as Greenwood avenue, in East Orange, New Jersey, before the plaintiff was in a position of danger.

The action was tried before Judge Speer and a jury at the Hudson Circuit. At the close of the plaintiff's case the court directed a nonsuit in favor of the Morris and Essex Railroad Company, and at the close of the whole case directed a verdict in favor of the remaining defendants. From the

judgment thereupon entered the plaintiff has appealed to this court.

In the statement of the case, with which the brief for the plaintiff-appellant is prefaced, it is asserted, and may be conceded, that there was evidence from which the jury might have found the following facts:

At the point where the railroad crosses Greenwood avenue there are two tracks, one known as the eastbound track, on which trains run to New York; the other known as the westbound track, on which trains run from New York. The highway crosses the tracks at right angles. About three hundred feet to the west of the westerly line of Greenwood avenue is located what is known as the "eastbound station," where passengers board trains for New York. This station is located on the southerly side of the railroad tracks. There are crossing gates at the highway, one located on the northerly, the other on the southerly side thereof, extending all the way across the highway, including the sidewalks on either side thereof. At the time of the accident a flagman was on duty in charge of the gates. Plaintiff had a return ticket on the line of the defendant railroad, and on the day of the accident had been visiting at East Orange and was intending to return to New York. For that purpose she was on her way to the eastbound station when the accident happened. On her way to the station plaintiff crossed a vacant lot located on the northerly side of, and adjacent to, the northerly right of way line, about four hundred feet east of Greenwood avenue. After crossing this lot she turned to the west and walked along a path on the right of way, which ran parallel with the tracks and five or ten feet distant therefrom. She continued along this path in a westerly direction until she reached the public highway known as Greenwood avenue. When she reached the highway the crossing gates were up. She walked a short distance to a point almost in the centre of the highway and then turned to her left for the purpose of crossing the tracks and proceeded west to the eastbound station. Just as the plaintiff turned to pass over the tracks she saw an eastbound train coming into the station, and thinking that this was the train

which she was to take to New York she started to hurry over the crossing. While her attention was attracted to this train a westbound train approached from the opposite direction, moving very slowly, towards and over the crossing. This westbound train gave no signal or warning of its approach until it was about thirty or forty feet away, at which time a sharp blast of the whistle was sounded. Plaintiff was struck by this westbound train while she was in the centre of the crossing. This train was moving not faster than eight miles an hour and could have been stopped within about twenty feet.

As a result of the accident plaintiff received very serious personal injuries.

The defendant Moore was, as stated, the engineer who was operating the locomotive by which the train was drawn; it was alleged that he was negligent, in that he failed to give any signal of the approach of the train, as required by the statute of this state, and did not keep a proper lookout. The defendant Case was employed by the railroad company as a flagman at the crossing, and it was alleged that he was negligent, in that he did not close the gates or warn the plaintiff of the approach of the train.

It ought, perhaps, to be stated that plaintiff was the only one of several witnesses who testified the gates were up, the others said they were down. There was evidence also that the bell on the engine which struck the plaintiff was rung, as required by the statute, but this was disputed, largely by negative evidence. And there was evidence showing that the train was running about twenty miles an hour. These, under our decisions, were jury questions, but the plaintiff was not entitled to go to the jury, as will hereafter appear.

The nonsuit as to the Morris and Essex Railroad Company is not before us for consideration. Counsel for the plaintiff-appellant concedes that at the trial there was no proof that that defendant had anything to do with the operation of the train which ran the plaintiff down.

The principal reliance of the plaintiff-appellant for a reversal of the judgment in this case, is the contention that the

railroad crossing statutes of 1909, chapters 35 and 96, apply, and that they required the trial judge to submit the question of the plaintiff's contributory negligence to the jury. This the trial judge refused to do, holding that neither statute was applicable, and that the plaintiff crossed the railroad tracks subject to the common law duty of looking and listening and doing those things which would make looking and listening reasonably effective, observing that it was manifest that the plaintiff had not performed, or attempted to perform, that duty, because, if she had looked in the slightest degree, she must have seen the train which struck her, unless some temporary obstruction interfered, in which event she should have delayed crossing until an opportunity was afforded to make the required observation. In this court plaintiff-appellant argues also that the Crossing act of 1910, chapter 278, applies, that under that act also the case was required to be submitted to the jury. This point appears not to have been made in the trial court.

The grounds of appeal are—*first*, that the trial judge should have submitted the issues, so far as they related to the defendants the Delaware, Lackawanna and Western Railroad Company, James F. Moore and Joseph I. Case, to the jury, and *second*, that whether the last-named defendants were negligent and whether their negligence was the proximate cause of the injury, and whether such injury was caused by contributory negligence on the part of the plaintiff, should have been submitted to the jury.

The points made on behalf of the plaintiff-appellant in the argument before us were—*first*, that there was evidence to go to the jury on the question as to whether the engineer was negligent; *second*, there was evidence to go to the jury on the question as to whether the crossing gateman was negligent: *third*, under the crossing statutes of 1909 it was the duty of the trial judge to submit to the jury the question of whether the plaintiff was chargeable with contributory negligence, and under this head it was argued that the Grade Crossing act of 1910 applies, and *fourth*, plaintiff was not a trespasser at the time of the accident. These contentions will be con-

sidered in their inverse order.  Before proceeding to this,
however, it is pertinent to remark that the question presented
on this record, namely, a claim of liability of a railroad com-
pany for an injury at a grade crossing where safety gates are
installed, to one who got onto the crossing not over the high-
way past the gates when up but by getting onto the crossing
inside of the company's right of way by coming down along-
side of the tracks from a point beyond the highway, is one of
novel impression, and, therefore, the cases in our courts in
which the effect of the crossing acts were considered in rela-
tion to accidents, are not helpful in its solution, because none
of them involved any such question.  See *Tischman* v. *Erie
Railroad Co.*, 81 *N. J. L.* 268; *Petit* v. *West Jersey and Sea-
shore Railroad Co.*, 86 *Id.* 298; *Fernetti* v. *West Jersey and
Seashore Railroad Co.*, 87 *Id.* 268; *Brown* v. *Erie Railroad
Co.*, *Id.* 487; *Waibel* v. *West Jersey and Seashore Railroad
Co.*, *Id.* 573; *Hatch* v. *Erie Railroad Co.*, 88 *Id.* 515;
*Schnackenberg* v. *Delaware, Lackawanna and Western Railroad
Co.*, 89 *Id.* 311; *Kratz* v. *Delaware, Lackawanna and Western
Railroad Co.*, 90 *Id.* 210.

There are, however, cases in other jurisdictions bearing
upon the question at issue here, notably *Matthews* v. *Phila-
delphia and Reading Railway Co.*, 161 *Pa. St.* 28, and *C. R. I.
& P. R. R. Co.* v. *Eininger*, 114 *Ill.* 79.

In *Matthews* v. *Philadelphia and Reading Railway Co.* it is
stated that for a long time the railroad company had main-
tained safety gates on each side of the crossing where the ac-
cident occurred, and the court said in its opinion (at *p.* 31):

"If the gates were up inviting him to cross, and no warning
was given by the watchman, notwithstanding the difficulties
of seeing and hearing, it would have been for the jury to de-
termine whether he exercised care according to the circum-
stances.  But if a trespasser reached the middle of that cross-
ing from the ties either up or down the railroad, he is in no
sense of the word a traveler from the street approaching
danger, and about to exercise a right common to the public,
that of crossing the railroad.  The watchman will not be on
the lookout to warn him, nor will the gates be lowered to

stop him. These safeguards are to keep people from going on the crossing on the approach of trains, not to warn them to get off. The deceased was bound to know the purpose of the gates and the watchman, and that they were not there to guard against danger to those using the crossing from the direction of outgoing and incoming trains."

In *C. R. I. & P. R. R. Co.* v. *Eininger* the question was with reference to a flagman, not as to gates, at a street crossing over a railroad; but it is not perceived that there is any difference in principle between the two; both flagmen and gates are for the purpose of warning the traveling public as to the danger of, and preventing them from, crossing over a railroad where it intersects a public highway. The court said in its opinion (at *p.* 84):

"Flagmen are for the protection of persons crossing railroad tracks, and are not for the benefit of persons walking along and upon a railroad track, employing it as a footpath."

While the plaintiff's injury in the Eininger case occurred at a street crossing, it does not appear that the injured person was attempting to cross the street where the accident occurred, but was going along the railroad company's right of way. While this circumstance was more unfavorable to the plaintiff in that case than the situation in the Matthews case, where the injured person was attempting to cross the highway, having gotten upon it from within and along the railroad right of way some distance from the highway where the accident occurred, still it has a distinct bearing upon the question as to whether a railroad company owes the duty of warning or protection, at a highway crossing, to a person who goes deliberately upon the right of way without approaching it on the highway where the safety device, whatever it may be, is maintained. The facts in the Matthews case make its doctrine particularly apposite in the case at bar, for there, as here, the injured person went upon the highway from within the company's right of way upon which he trespassed at a point beyond the highway crossing.

1. As to whether plaintiff was a trespasser at the time of the accident. Counsel for defendants-respondents argues that

the plaintiff was a trespasser upon the tracks by reason of the provisions of section 55 of the General Railroad act (*Comp. Stat., p.* 4245), which provides—

"It shall not be lawful for any person other than those connected with or employed upon the railroad to walk along the tracks of any railroad except when the same shall be laid upon a public highway; if any person shall be injured by an engine or car while walking, standing or playing on any railroad, or by jumping on or off a car while in motion, such person shall be deemed to have contributed to the injury sustained, and shall not recover therefor any damages from the company owning or operating said railroad; provided, that this section shall not apply to the crossing of a railroad by any person at any lawful public or private crossing."

Counsel for plaintiff-appellant argue that she was not a trespasser because she was within the proviso of the statute which is that the section shall not apply to the crossing of a railroad by any person at any lawful public crossing, and that there is no dispute but that at the time of the accident, and for an appreciable period prior thereto, the plaintiff was in the position of a highway traveler about to pass over the railroad crossing.

Assuming, although the plaintiff entered upon the defendant railroad company's right of way as a trespasser and had proceeded along that right of way until she reached the highway crossing, that then she ceased to be a trespasser and became a traveler on the public highway, still, that fact would not entitle her to recover if neither of the grade crossing statutes of 1909 applied, for, assuming her right to be upon the crossing at the time she was injured, she was guilty of contributory negligence and may not escape the consequences thereof, unless that question was required to be submitted to the jury by the operation of the legislative acts mentioned. Their applicability or non-applicability to the case *sub judice* will now be considered.

2. As to whether the crossing statutes of 1909 applied. The first (*Comp. Stat., p.* 4238, *ch.* 35, § 36*a*) is as follows:

"Whenever any railroad company shall have assumed to

establish and maintain what are known as safety gates at any railroad crossing in this state, and a person is killed or injured at any such crossing by being struck by a locomotive or train when attempting to cross the tracks at a time when such gates are not down, as required by any statute giving the railroad the right to run through an incorporated city at any rate of speed they see fit, upon compliance with the provisions of such statute, that in all such cases the question whether the person so killed or injured, upon attempting to cross such railroad crossing, at a time when the safety gates at such crossing are not down, was or was not guilty of contributory negligence, shall be a question to be determined by the jury, in all actions brought to recover damages for such loss of life or personal injury."

Now, the first provision is that whenever any railroad shall have established and maintained *safety gates* at a *railroad crossing*. Here is manifested an intention to provide safety by the gates themselves, and the only rational safety thus sought to be established, as we view it, is to prevent persons going by—that is, past the gates when down and getting onto the tracks in a situation of danger. The gates were, in other words, installed so that when down, persons would be prevented from going onto the tracks until they were raised and the way thus demonstrated to be clear and free from danger. We think it would be doing violence to the legislative intent, clearly manifested, to hold that the operation of these gates was intended as well for the benefit of those already within them, and who, therefore, could not be stopped by them, as for those approaching outside of them and who could be effectively warned by their being lowered. The further provision that in all cases where persons are killed or injured at any such crossing by being struck by a locomotive or train when *attempting to cross the tracks when such gates are not down,* the question of contributory negligence shall be determined by the jury, clearly contemplates a case where the person crossing is a traveler on the highway, and who, on the highway, has reached the side line of the company's right of way for the purpose of crossing over its tracks and who would certainly

be warned of his danger and prevented from going upon the tracks by means of the lowered gates. It cannot be said that the operation of gates behind a person already on the railroad right of way and in the act of crossing the tracks could afford him any protection. In this situation the person on the right of way could see approaching trains as well, if not better, than the gateman whose duty it is to lower the gates upon the approach of trains.

The title of the statute is "An act relative to accidents at railroad crossings." Thus in the title, as well as in the enacting clause, the word "crossing" is prominent and illuminating. It contemplates crossings all the way over the railroad company's right of way and tracks upon the highway and not some part of them inside the outside lines of the right of way. And the act was not intended to benefit a person who, through a trespass upon defendant's right of way, or otherwise, has gotten onto the highway crossing within the outside lines of the gates which were installed for the protection of travelers on the highway and are not intended as signals to those who have gotten within them without approaching them on the highway.

The second (*Comp. Stat., p. 4238, ch. 96, § 36b*) is as follows:

"Whenever any railroad whose right of way crosses any public street or highway, has or shall install any safety gates, bell or other device designed to protect the traveling public at any crossing or has placed at such crossing a flagman, any person or persons approaching any such crossing so protected as aforesaid, shall, during such hours as posted notice at such crossing shall specify, be entitled to assume that such safety gates or other warning appliances are in good and proper order, and will be duly and properly operated unless a written notice bearing the inscription 'out of order' be posted in a conspicuous place at such crossing, or that the said flagman will guard said crossing with sufficient care whereby such traveler or travelers will be warned of any danger in passing over said crossing, and in any action brought for injuries to person or property, or for death caused at any crossing protected as

aforesaid, no plaintiff shall be barred of the action because of his (the) failure of the person injured or killed to stop, look and listen before passing over said crossing."

What has been said above with reference to chapter 35 is generally applicable to chapter 96. Here, again, the manifest legislative intent was to protect the traveling public at any crossing—that is, to prevent a member of the public from continuing traveling beyond a safety-gate extending over the highway crossing along the edge of a railroad company's right of way, when down, which would give warning of danger and actually prevent a person from going onto the tracks and getting into a place of danger, except by the most deliberate acts on his part. The title of this act is "An act with reference to the degree of care necessary to be used by travelers over railroad crossings protected by flagmen or safety gates, or both." The clear legislative intent in this title is to provide protection for travelers upon the public streets and highways, and it could not have been in the contemplation of the law-making body that the act they were passing was one which would put a premium upon the recklessness or carelessness of persons who gain access to a railroad's right of way on a highway crossing without having, as a traveler on the highway, gotten onto the railroad by walking or driving on the highway up to it. Further, as to this statute: During such hours as posted notice "at such crossing" shall specify, the traveling public, unless a written notice "out of order" be posted at a conspicuous place at such crossing, shall be entitled to assume that the gates are in good and proper order and will be duly and properly operated. Where is this notice to be posted to carry out the legislative intent? Manifestly, not inside the gates, but outside of them facing down the highway so that those approaching on the street and intending to cross the right of way and tracks may see and look out for their safety accordingly. The warning about the gates being out of order is intended for the protection of such persons as approach them and not for those who have ignored their presence by going onto the tracks without regarding them.

The accident to the plaintiff-appellant, which is the subject of this suit, was first made a cause for action in the District Court of the United States for the district of New Jersey where, after trial, the plaintiff had judgment, which was reversed in the United States Circuit Court of Appeals for the third circuit. In the case on appeal (*Delaware, Lackawanna and Western Railroad Co.* v. *James,* 241 *Fed. Rep.* 344; *S. C.,* 154 *C. C. A.* 224) the court said:

"Some four hundred feet east of the crossing, Miss James had entered on the railroad's right of way and had walked westwardly alongside of the track. In so walking along the track she was, by the New Jersey statute quoted in the margin (*Pamph. L.* 1903, *p.* 673), a trespasser. But, while this was her then status, it is clear that, when she left the side path and entered on the street crossing and attempted to cross, she ceased to be a trespasser. Nevertheless, the fact of her prior trespass is not to be overlooked, for by such precedent trespass she was enabled to reach the crossing inside the gates which she would have had to pass had she come up by a proper approach on Greenwood avenue. It follows, therefore, that by her violation of the statute of New Jersey, she brought herself into a position where she had deprived herself of the protection which another statute of New Jersey, also quoted in the margin (*Pamph. L.* 1909, *p.* 137), was designed to give to those traveling on Greenwood avenue as they approached such crossing. Indeed, it is evident that it was the plaintiff's own trespass, and not the alleged non-closure of the gates that brought her inside the gate line."

Quotation is made from this opinion to show that the United States Circuit Court of Appeals, with reference to this very accident, and upon what must have been substantially the same state of facts in evidence as appears from observations in the opinion, also held that the plaintiff was not entitled to the benefit of the New Jersey statute, and we may say statutes, for the protection of persons crossing over highways over railroads, because of her getting onto the right of way not over the highway but as a trespasser, in the first place, at least, by going onto the railroad's right of way and follow-

ing it down to the crossing. And we agree with that court that, even if she were not a trespasser because upon the highway crossing at the time the accident occurred, still, as her precedent trespass enabled her to reach the crossing inside the gates, it is not to be overlooked. As to whether when she reached the crossing she ceased to be a trespasser, we find it unnecessary to decide.

The rationale of this subject can perhaps be best expressed in the language of the Supreme Court of Pennsylvania in the Matthews case: "These safeguards (railroad crossing gates) are to keep people from going on the crossing on the approach of trains, not to warn them to get off."

It is true that this court held, in *Brown* v. *Erie Railroad Co., supra,* that both of these statutes of 1909 (chapters 35 and 96) applied to every railroad crossing in the state which is protected by safety gates, but there is nothing in the Brown case which makes for the contentions of the plaintiff-appellant in the case at bar. In the Brown case the decedent approached and passed onto the railroad right of way on the highway where safety gates were installed, which were up at the time, and he was killed. While it is not stated in terms in the opinion that he approached the right of way and walked onto the tracks from outside of them, such appears to be the fact by the clearest inference from all that was said therein; and there is nothing whatever in that case to suggest that the deceased gained access to the tracks in any irregular manner. An examination of the paper book in that case, which was before the judges and which is preserved in the state library, will show the fact to be that deceased approached and went onto the railroad right of way over and along the highway at the point where it joined and crossed over the railroad tracks.

Counsel for the plaintiff-appellant asserts in addition that the Grade Crossing act of 1910 (*Comp. Stat., p.* 4238, *ch.* 278, § 36c) applies, and argue, that under it a trial judge must, in the first instance, submit the question of contributory negligence to the jury. But that that statute has no application to the case at bar is apparent from its title, which is "An act

concerning the liability of railroads for injury to persons or property caused by running cars across public streets and highways at which crossings no safety gates, bell or other device to give warning to the traveling public has been installed." This title very clearly expresses the object of the enactment (*Waibel* v. *West Jersey and Seashore Railroad Co.*, *supra*), and as safety gates were installed and existed at the crossing where the accident happened at the time of its occurrence, this statute, by its very terms, excludes its applicability to the case at bar.

As none of these grade crossing acts of 1909 and 1910 apply, the plaintiff-appellant's right to recover must be tested by the common law rule of contributory negligence. That rule was thus stated by Mr. Justice Depue, speaking for the Court of Errors and Appeals in *New Jersey Express Co.* v. *Nichols,* 33 *N. J. L.* 434, 439 :

"To conclude him (plaintiff) from maintaining his action, his conduct must have been negligent, and his negligence must have contributed to the injury in such a way that if he had not been negligent he would have received no injury from the negligence of the defendant."

The facts concerning the accident from the plaintiff's own lips upon the witness-stand were as follows:

"Q. Just describe what you did.

"A. I went through the lot on Eaton Place onto a path that runs parallel with the tracks and I walked up the track—up the path—alongside of the tracks.

"Q. And where were you going?

"A. To Grove Street station.

 \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. What was your intention in going in that direction; where were you going to?

"A. New York.

"Q. To take a train?

"A. Yes.

"Q. When you saw this train coming into the Grove Street station where were you; I mean the train going to New York; where were you with reference to the crossing?

*92 N. J. L.*        James v. D., L. & W. R. R. Co.

"A. I was walking up towards it.

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*

"Q. Then what did you do with reference to the crossing?

"A. I wanted to get—— I thought that was my train and tried to get it.

"Q. Well, did you get on the crossing?

"A. I walked up on the crossing, and when I——

"Q. And when you got on the crossing, how did you get on the crossing; I mean did you walk on the cobblestones or go in between the rails, or how did you get on the crossing?

"A. I went right in between the rail—between the gate and the track.

"Q. The first rail?

"A. Yes.

"Q. What is there between the gate and the first rail?

"A. A path.

"Q. Aren't the cobblestones there between the gate and the first rail? (No answer.)

"Q. Well, you walked on—if you do not know—you walked on between the gate and the first rail, and did you keep on going west?

"A. Yes, sir.

"Q. How far west did you go before you started to cross the crossing?

"A. Well, as I remember, I was standing there near the centre of it when I saw the train—the eastbound train pass.

"Q. And did you hear any bell or whistle from the westbound train?

"A. No.

"Q. Then, what was the next thing you knew?

"A. Well, the eastbound train passed by me and then that is all I know.

"Q. You do not remember the westbound train hitting you at all?

"A. No.

"Q. Where were you when you came to?

"A. In the Orange Memorial Hospital."

It is apparent from this statement of the plaintiff that what she did was this: Being on the crossing and near to a passing train, there being, however, a track between her and the passing train, on which near track a train was approaching her, which she must have seen had she looked, she waited for the passing of the train on the farther track, intending to cross over both tracks, when, just after the passing train got by her, she was struck by the approaching train on the near track. She appears not to have looked along the near track in the direction from which the train thereon was approaching, as prudence for her own safety required her to do, for had she done so, she might have drawn back and avoided the accident which resulted from her carelessness. If that which she did was not negligence contributing to her injury in such a way that had she not been so negligent she would have received no injury, no matter how negligent the defendants, or any of them, were, it is hard to conceive of a case of that sort. It appears that she was utterly reckless and took no precaution whatever for her own safety.

It is plain that upon the undisputed facts the plaintiff-appellant was guilty of contributory negligence as a matter of law; and this required the trial judge to direct a verdict for the defendants-respondents, as he did, if not, to nonsuit the plaintiff when her case was rested, which he refused.

3 and 4. As none of the three grade crossing acts apply it is unnecessary to consider and decide whether the plaintiff was a trespasser on the railroad at the time she was injured or whether the engineer or the gateman was negligent, for, as matter of law, as already shown, her own contributory negligence bars her from any right of recovery.

The judgment under review must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 13.

*For reversal*—None.