# CASES

## ARGUED AND DETERMINED

IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### ARENA v. DELAWARE, L. & W. R. CO.

(Circuit Court of Appeals, Third Circuit. September 1, 1923.)

No. 3009.

1. **Railroads ⬦326(3)—Passing under lowered gates on crossing contributory negligence.**

   Where, in an action for the death of a person killed on a railroad crossing, there was no evidence that any train was standing near or approaching other than the one which killed deceased, an instruction that, if the crossing gates were lowered and he passed under them and on the track, it constituted contributory negligence, and there could be no recovery, *held* correct.

2. **Witnesses ⬦391—Limit of cross-examination.**

   A witness, examined only for the purpose of impeaching another witness by showing a contradictory statement made by him, cannot properly be asked a question on cross-examination bearing only on the issues and having no relation to the matter of his direct examination.

3. **Railroads ⬦335(3)—Lowering of gates at crossing is sufficient warning of approaching train.**

   Lowering of the gates at a railroad crossing is sufficient warning of an approaching train, and in an action for the death of a person who passed under the lowered gates on the crossing, whether or not the train gave a crossing signal is immaterial.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action at law by Carmelia Arena, administratrix of the estate of Philip Arena, deceased, against the Delaware, Lackawanna & Western Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Collins & Corbin, of Newark, N. J. (Edward A. Markley, Geo. S. Hobart, and Chas. W. Broadhurst, all of Jersey City, N. J., and Weinberger & Weinberger, of Passaic, N. J., of counsel), for plaintiff in error.

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frederic B. Scott, of New York City, for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This writ of error was sued out to review the judgment entered in the District Court, on the verdict of a jury, in favor of the Delaware, Lackawanna & Western Railroad Company, defendant. The plaintiff, here and in the District Court, is the widow of Philip Arena and administratrix of his estate. She brought. this suit to recover the loss suffered by her and her children, as next of kin, on account of his death, which she charged was due to the negligence of the defendant company. The accident occurred at the intersection of Bloomfield avenue and the tracks of the defendant in the city of Passaic, N. J. The negligence charged is that the defendant did not give the statutory signal of the approach of the train that killed the deceased; that the watchman at the crossing did not lower the safety gates, and as a result the deceased was struck by the engine and so severely and seriously injured that he died shortly thereafter. She also charges error because the trial judge refused to allow the following question to be answered, on the ground that it was not cross-examination: "Did your engine blow a whistle?" At the close of his general charge counsel orally requested the judge to charge:

"That it is compulsory upon the part of a railroad, even though it maintains gates, to blow a whistle or sound a gong of some kind within 900 feet of the railroad crossing."

He refused so to charge, but said:

"I have not charged those points, gentlemen of the jury, because in my view of this case the proximate cause of the injury—that is, the nearest efficient cause of the injury, the nearest efficient cause of the death of the decedent—was the failure to lower the gates; if the railroad company failed to lower the gates in time to protect the pedestrian from the injury which occurred at the time he went on the railroad track, it is liable. In my view of the matter, that is negligence. However, if they lowered the gates, and if the gates were lowered, and the deceased passed under those gates, then I charge you, gentlemen of the jury, as a matter of law that his negligence was of such a kind that it contributed to the injury which occurred when he was struck by the railroad train, and that no antecedent or prior negligence, such as the failure to blow a whistle or sound a gong, was the proximate and efficient cause of the injury which happened."

Counsel excepted to the refusal and to the above statement to the jury in relation thereto. Exception was also taken to the following portion of the charge:

"If a railroad company, without giving any notice, fails to operate its gates, it is guilty of negligence. If a person passes upon a railroad track when the safety gates are down, he is guilty of negligence. The railroad company has done all it can to guard its right of way. The rights of the public and the rights of the railroad are reciprocal. If the railroad company has lowered its gates, and has given notice to the public that it is unsafe to cross, and persons go upon a railroad track when the safety gates are down, they do so at their peril. They take the risk of what may occur. Or if the railroad company permits persons to pass upon its right of way when trains are approaching without lowering its safety gates, then the railroad company is responsible for that which occurs.

"It is a question of fact in this case as to what did happen. I have stated

the proposition to you very broadly. Of course, you realize that in law negligence is the failure to exercise that degree of care which a reasonable and prudent man similarly situated would exercise, and the duty rests upon the plaintiff to show by the weight of evidence that the railroad company in this case failed to exercise that degree of care, and that its failure was the proximate and efficient cause of the injury which happened.

"In simple parlance, the cause of this injury was the going upon the railroad track. If the man went on when the safety gates were lowered, he took his chances. However, if he went on, and the safety gates were not lowered until after he got on, the railroad company would be negligent in permitting such an occurrence to happen."

Considering the second question first, the judge charged and recharged that, if the railroad company did not lower the gates until after the deceased went on the tracks, and he was not given an opportunity to get to a point of safety after he was allowed to go on the tracks, it was negligent, and liable for his death; but, on the other hand, if it lowered the gates before the deceased went upon the tracks, and he passed under them and met his death, the railroad company was not liable. This question was made very clear. The testimony as to whether the deceased went on the tracks before or after the gates were lowered was conflicting, and sufficient to sustain either finding. The witness Pallo testified that the gates were lowered after the deceased was on the tracks, but the witness Gow testified that they were lowered before and that the deceased went under the gates. With reference to the determination of this important fact, the judge charged the jury that:

"It is a question of fact for you gentlemen to determine from all the evidence where lies the truth."

This he repeated to the jury several times. The verdict of the jury settles as a fact that the gates were lowered before the deceased went on the tracks; that he went under the gates and met his death in consequence. We start with this fact settled by the verdict of the jury.

[1] Did the judge err in charging that, as a matter of law, if the deceased went under the lowered gates upon the tracks in front of the on-coming train and was killed, he was guilty of contributory negligence and the plaintiff could not recover? The purpose of gates where a railroad crosses a highway is to protect the traveling public by giving notice of the approach of trains. An approaching traveler may assume that the gates are in order and will be properly operated. P. L. of N. J. 1909, 96; Erie R. Co. v. Schultz, 183 Fed. 674, 106 C. C. A. 23; Erie R. Co. v. Schmidt, 225 Fed. 513, 516, 140 C. C. A. 655. Raised gates, in the absence of a notice that they are out of order, indicate that no train is approaching so near as to make it dangerous to cross; but when down they are a warning that a train is approaching and it is unsafe to cross. The case of Erie R. Co. v. Schmidt, supra, is not an exception to this rule, because safety gates played no part in that case. The fact that they were down did not necessarily mean that a train was approaching on track No. 3 (as there was in fact), because their position might be referred to the presence of the train standing on track No. 1, in which the deceased had come to the station. In the

instant case the evidence does not show that there was any other train at the station or approaching than the one which killed the deceased. If he disregarded the warning, given him by the lowered gates, of the approaching train, and deliberately in the face of that warning went under the gates and upon the track in front of the train, we think it was not error to instruct the jury that as a matter of law he was guilty of contributory negligence, and the plaintiff could not recover.

[2] Did the trial judge err in refusing to allow the conductor of the train, under cross-examination, to answer the question, "Did your engine blow a whistle?" No question bearing on this subject was asked the conductor in his examination in chief. We do not think it was proper cross-examination. After testifying that he was the conductor, his entire examination in chief, consisting of one page, was directed to impeaching the witness Pallo, who, he said, told him at the time of the accident, contrary to his testimony at the trial, that the gates were down. A witness may be cross-examined as to his examination in chief in all its bearings, and as to whatever goes to explain or modify what he has stated in his examination in chief, and to all matters connected with the res gestæ. 1 Thompson on Trials, 40, § 406. But on cross-examination he may not be examined on a matter upon which he was not examined in chief and which is material only by way of defense. Donnelly v. State, 26 N. J. Law, 463, 494; State v. Brady, 71 N. J. Law, 360, 59 Atl. 6. The question asked had nothing whatever to do with the impeachment of Pallo, and does not come within the rule of res gestæ, as suggested by counsel, and the refusal to permit it to be answered was not error.

[3] When the deceased had been apprised, by the lowered gates, of the danger of the approaching train, the purpose of the statutory signal was served, and no other warning was necessary, whether or not the statutory signal had been given, for he already had adequate knowledge. 3 Elliot on Railroads (3d Ed.) § 1652; 33 Cyc. 1045; Courtney v. Public Service R. Co., 96 N. J. Law, 308, 115 Atl. 740; Horn v. Baltimore & Ohio R. Co., 54 Fed. 301, 4 C. C. A. 346.

The judgment of the District Court is presumptively right. Southern Railway Co. v. Lester, 151 Fed. 573, 575, 81 C. C. A. 53. The plaintiff has not borne the burden cast upon her of showing the contrary, and the judgment is affirmed.