BERTHA HACKNEY, ADMINISTRATRIX, &c., OF ALFRED HACKNEY, DECEASED, DEFENDANT IN ERROR, v. THE DELAWARE AND ATLANTIC TELEGRAPH AND TELEPHONE COMPANY, PLAINTIFF IN ERROR.

Submitted March· 24, 1903—Decided June 15, 1903.

1. It is error to instruct the jury, in a suit by an administrator for the benefit of the widow and next of kin, that they may consider what the deceased, had he lived, would probably have been able to give to the widow or next of kin, from his earnings, during his life, and to foot up that amount as the damages to be thus awarded.
2. Such an instruction fails to take into account the fact that the widow and next of kin will come into present possession of the fund, with the future income thereon.
3. What the plaintiff is entitled to recover is a "capital fund" (so to speak) which will represent the present value of all the pecuniary loss which will fall upon the widow and next of kin by the premature taking off of the intestate.
4. Where there are two counsel engaged in a cause for the plaintiff, and one of the counsel, when the evidence is in, opens for the plaintiff, and the defendant's counsel states to the court that he does not desire to reply, and a second counsel is then permitted further to address the jury for the plaintiff, against objection, it is error.
5. The same counsel who has opened may, in the discretion of the court, after the defendant has stated he has no reply, be permitted to make a further opening. under the circumstances. stated in *Garrity* v. *New York and Long Branch Railroad Co.*, 34 *Vroom* 50.

---

On error to the Supreme Court.

For the plaintiff in error, *Edward A. Armstrong.*

For the defendant in error, *Henry S. Scovel* and *William T. Boyle.*

The opinion of the court was delivered by

Fort, J. This was a suit by an administratrix, under the Death act, to recover for the widow and next of kin the pecuniary loss sustained by them by the death of the intestate.

The injury resulted from a horse becoming frightened while attached to a carriage in which the plaintiff's intestate was riding along a public highway. The cause of the fright was alleged to be the negligent use of a wagon containing coils of wire, which were being unwound and strung by the defendant upon poles upon or adjacent to the highway. There was a verdict for the plaintiff, and the defendant sues out this writ of error and assigns two grounds for reversal—*first,* an erroneous statement in the charge as to the rule of damages in such cases, and *second,* that the court permitted a second counsel to address the jury for the plaintiff, after one of the plaintiff's counsel had opened, and the counsel of the defendant had stated he would not reply or address the jury.

The learned trial justice charged the jury as to the measure of damages as follows: "You must form your judgment as best you can in a reasonable way in finding out what this man would have earned if he had lived up to the time you conclude he would have been liable to live and to have been useful in earning money. As I understand it, you are to get at your estimate upon these lines, and these alone. Then, footing the matter up, if you find a verdict for the plaintiff, you foot up what the amount is and so state in your verdict, if you find a verdict in favor of the plaintiff, and for such a sum as you think will be the pecuniary loss, estimated on the basis that I have stated."

The attention of the justice was called to this statement by counsel by an exception, and the jury, upon being recalled, because of some other matters, for further instruction, the justice on this question then further said: "Take the conditions and judge the best you can as to how he would live, in that respect, and how much he would earn and *be able* to contribute to the widow and next of kin, and how much they would lose by his death from these contributions—his earnings. That is left entirely to the jury upon the evidence."

A trial judge is compelled to state the principles of law applicable to the case immediately at the conclusion of the testimony, and he is held, in these days, by a learned and watchful profession, to the closest accuracy in so doing. The wonder is that in the haste of a trial errors are so infrequent.

In reading the charge as a whole (the extracts above quoted being but a part), it is difficult to escape the conclusion that the jury may have gathered from the language employed that they were to "foot up" or "sum up" the whole amount the intestate, had he lived, would "have been able to contribute to the widow and next of kin," and return that amount as their verdict.

That was giving to the widow and next of kin as a present value the whole amount which the jury might find the intestate, had he lived, would have given to the widow and next of kin, in installments, at future periods, during the whole of his life. Such an instruction does not take into account the fact that the widow and next of kin will come into the present possession of the fund with the future income thereof. What the plaintiff is entitled to recover is a "capital fund" (so to speak) which shall represent the present value of all the pecuniary loss which will fall upon the widow and next of kin by the premature taking off of the intestate. That fund is to be ascertained by taking into account all the possibilities. The intestate might have died by the course of nature shortly after the accident. He might, had he lived, have suffered financial reverses. The wife, had he lived, might have died long before he did. So might his next of kin. Nothing is to be added "for loss of society or wounded feelings or anything else which cannot be measured by money and satisfied by a pecuniary recompense." *Tiff. Death by Wrong. Act or Def.,* ch. 10, § 153.

Mr. Justice Magie, speaking for the Supreme Court in *Demorest* v. *Little,* 18 *Vroom* 28, says, as to damages in this class of cases: "They are to be determined exclusively by reference to the pecuniary injury resulting to the widow and next of kin of deceased by his death. The injury to be thus recovered for has been defined by this court to be 'the depriva-

tion of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased.' Compensation for such deprivation is therefore the sole measure of damages in such case." Citing *Paulmier* v. *Erie Railway Co.*, 5 *Id.* 151.

In *Telfer* v. *Northern Railroad Co.*, 1 *Vroom* 188, Chief Justice Beasley says: "It is manifest, from the structure of this section, that it was not designed to vest an arbitrary discretion in the jury to give what damages they may think fair and just, without reference to any fixed standard by which to estimate them. The important qualifying words are added, referring to the pecuniary injury resulting to the widow or next of kin. The injury forming the basis of calculation must be pecuniary; nothing else can enter into the estimate."

In none of the cases cited has it been in express language set forth that it is the present value of the pecuniary loss which the jury is to find, although such an expression is usually found in the charges of the trial judges at the circuit.

In the charge before us the jury were permitted to consider the whole amount of the possible pecuniary benefits which the widow and next of kin would have received, from time to time, during the life of the intestate, had he lived, and to sum that up as the measure of damages.

That instruction did not require the taking into account of the present possession of the whole fund and the resultant benefit therefrom and the future accretions thereon, and hence was erroneous.

The error assigned on this part of the charge is sustained.

Upon the testimony being closed, the record before us, upon which error has been assigned, is as follows: "(Mr. Boyle opens the case to the jury for the plaintiff. Mr. Armstrong states that he has nothing to state in reply. Mr. Scovel proposes to address the jury on the part of the plaintiff, and Mr. Armstrong objects.)

"Mr. Scovel—If your honor please, I think I should be allowed to address this jury for the plaintiff. If there is such a rule I would like to see it and have counsel produce it.

"The Court—Mr. Armstrong, do you desire to argue the case to the jury?

"Mr. Armstrong—I do not.

"The Court—Now, Mr. Scovel asks to be permitted to add additional remarks in behalf of the plaintiff. Is there any objection to that?

"Mr. Armstrong—I object to that; there being nothing to reply to. I have not addressed the jury, and one of the counsel for the plaintiff has addressed the jury and there is nothing to reply to, counsel for the defendant not having addressed the jury.

"The Court—I think that inasmuch as Judge Armstrong did not announce his intention not to participate in the argument to the jury before the close of Mr. Boyle's remarks, and counsel for the plaintiff expresses surprise at that and desires to be further heard, I think it proper under the circumstances to allow Mr. Scovel, one of the counsel for the plaintiff, to address the jury if he desires to.

"Mr. Armstrong—Will your honor allow me an exception?

"The Court—No, I don't think I will, unless I have to under the rule.

"Mr. Armstrong—Then may I ask your honor to grant an exception to that ruling?

"The Court—Oh, yes; it is on the record, and you may have an exception if it is lawful. I think it is in the discretion of the court.

"Whereupon the defendant, by its counsel, prays a bill of exceptions, which is hereby allowed and sealed.

"(Thereupon Mr. Scovel addressed the jury on the part of the plaintiff.)"

We think this assignment of error is well founded. It was not within the discretion of the court to permit a second counsel to address the jury on the same side as that of the counsel who had opened.

It may be in the discretion of the court to permit the same counsel who had already addressed the jury to make a fuller opening in case he shall so request, but to permit other counsel to do so or to further address the jury for the plaintiff

when no reply has been made by the counsel for the defendant, is not discretionary.

In *New York and Long Branch Railroad Co.* v. *Garrity,* 34 *Vroom* 50, the Supreme Court, speaking through Justice Gummere, says: "Ordinarily a plaintiff who makes a mere nominal opening does so at his peril; and, if the defendant then submits his case without argument, the plaintiff will not be allowed to make a second argument. But, although this is the customary practice, it is always within the discretion of the court, when such a case arises, to permit the making of a second argument by the plaintiff, or rather, to state it more accurately, to make a fuller and more complete opening; and such permission will usually be granted when it appears that plaintiff has been led into making merely a formal opening by the action of the defendant. When a second and more extended opening is permitted, however, the defendant is entitled to reply to it, if he so desires, and if he does so, the plaintiff then has a right to make the closing argument."

The forty-eighth rule of the Supreme Court, which, by rule 89, is made applicable in the practice at the circuits, declares: "48. When there shall be more counsel than one on the affirmative side, one only shall be heard in the opening and the other in reply, but both shall not be heard either in the opening or reply."

The permitting of a second counsel to address the jury in the face of objection was error, as it conferred upon the plaintiff a substantial benefit, to which, by law and the practice of our courts, he was not entitled.

In Delaware it is held that if the plaintiff opens the argument and the defendant submits his case without argument the plaintiff. may not make a, concluding speech. *Tyre* v. *Morris,* 5 *Harr.* (*Del.*) 3.

In the case before us the defendant in error relies upon 1 *Thomp. Tr.,* § 936, to sustain the permission granted to the second counsel to be heard after the defendant's counsel had stated he had no reply to make. To sustain the text, Judge Thompson cites but a single case—that of *Barden* v. *Briscoe,* 36 *Mich.* 254. We do not think the argument of Judge Camp-

bell in the Michigan case is sound. There is no authority for it in the English practice, nor, so far as I have been able to find, in the decisions of the several states. But, in our state, under the rules of our Supreme Court, there can be no question. On principle it should not be so. In all the books the right to reply is rested upon the theory of the right to answer —to have the last word—by the one who holds the affirmative. But it is solely a right to *reply*. If there is nothing to reply to and the opening argument is full, as it may be, upon what principle is it justifiable to permit a second counsel to re-argue the case? It is practically permitting a second opening. We think the true rule is stated in the case of *Garrity* v. *New York and Long Branch Railroad Co.,* 34 *Vroom* 50, and that the error complained of in this regard, in this case, must be sustained.

For these errors there must be a reversal of the Supreme Court and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Van Syckel, Dixon, Garrison, Fort, Garretson, Pitney, Swayze, Bogert, Vredenburgh, Voorhees, Vroom. 13.