AUGUSTINE HEXAMER, ADMINISTRATRIX AD PROSE-
QUENDUM OF WILLIAM HEXAMER, DECEASED,
PLAINTIFF, v. PUBLIC SERVICE RAILWAY COMPANY,
DEFENDANT.

Decided February 26, 1926.

Negligence—Death Through Trolley Company's Alleged Negli-
gence in Improperly Maintaining Its Station Platform and in
Operating Its Cars Negligently—Decedent Tripped on Plat-
form and was Run Over by Approaching Car—Plaintiff's
Judgment Held Not Excessive—Defendant Not Entitled to
Have Independent Income Considered in Mitigation of Dam-
ages—Verdict Not Contrary to Weight of Evidence—Trial
Judge Charged Proper Rule.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH
and CAMPBELL.

For the rule, Alexander Simpson.

Contra, Leonard J. Tynan.

PER CURIAM.

The complainant's decedent was killed by a westbound
trolley car on November 20th, 1922, at the defendant's
elevated station in Hoboken. The case was tried in the Hud-
son Circuit and there was a verdict for the plaintiff for
$10,500. The action was for negligence in maintaining a
defective platform and also for negligently operating its trol-
ley cars. The eighth paragraph of the amended complaint
alleges that the deceased was on the platform, that it was
out of repair, defective, improperly lighted and the boards
thereof projected in a way dangerous to persons thereon, &c.
The ninth paragraph avers that because of the condition of
the platform aforesaid, so caused by the failure of the de-
fendant to use reasonable care in the maintaining, operating

and repairing, and lighting thereof, the plaintiff's decedent, while upon the platform waiting for a car, tripped and fell upon the tracks of the defendant, upon which its cars were propelled. The tenth paragraph avers that at the time of the accident, when the plaintiff's decedent fell upon the tracks, there was a car approaching some distance away from the place where he fell upon the said tracks.

The eleventh paragraph avers that the car was negligently propelled against him. The twelfth paragraph sets forth that the negligence of the defendant in the last paragraph consisted in failure of the defendant to use reasonable care to propel said car at a safe rate of speed; to give warning of the approach thereof; to keep a look out for persons at or near the track so as to avoid injuring them; to have the said car under control so it could be stopped within reasonable distance; to heed a signal or warning given to the motorman by a person or persons upon the said platform to stop the said car at the said time.

The first reason presented for a new trial is that the damages are excessive. The deceased was fifty-four years old at the time of his death. He was a druggist. His widow was fifty-seven. He carried on the drug business for seven years for his own profit. He earned about $45 a day. He allowed his wife $20 a week for the table; furnished her with clothes and other things that she required. He occupied apartments for which he paid $65 a month. After his death the widow sold the store for $6,500. There was also proof that the clear profit of her husband was $25 a day.

We cannot say, in view of the evidence as to the husband's business capacity and his earnings and his future prospect of greater prosperity, based upon his past business career, his thrift, his generous conduct toward his wife, he being fifty-four and she fifty-seven years of age at the time of his death, that the award of the sum of $10,500 is excessive, in that the jury speculated wrongly in arriving at that figure, or that the verdict was clearly the result of mistake, passion, partiality or prejudice on part of the jury. The reasonable

expectation of life of the husband and the reasonable expectation of the life of the wife, and the probable prospective pecuniary benefits she would have derived from him if he had continued in life, while partly of a speculative character, was an element pre-eminently for a jury to pass upon, and with the evidence before us, we think a proper result was reached.

The contention on part of the defendant is that the jury in arriving at its verdict was entitled to take into consideration the fact that the widow, who inherited the plaintiff's decedent's store had received therefor $6,500, and as this was a benefit or pecuniary gain to her, the trial judge wrongfully struck out such testimony which was elicited from her on cross-examination, and thus eliminated a factor in the case from the consideration of the jury which tended to lessen the amount of her pecuniary loss. We think the testimony was properly struck out. According to the trend of authority such testimony is inadmissible. *Muradian* v. *Paganessi,* 128 *Atl. Rep.* 158; *Brabham* v. *Baltimore and Ohio Railroad Co.,* 220 *Fed. Rep.* 35; *L. R. A.* (1915) *E.* 1201; *Clune* v. *Ristine,* 36 *C. C. A.* 450; 94 *Fed. Rep.* 745; 6 *Am. Neg. Rep.* 416. In that case, Judge Thayer, who delivered the opinion of the court, said: "In the course of the trial the court permitted the defendant to prove, by way of mitigating the damages which the plaintiff might recover, that she had collected from an insurance company, after the death of her son, the sum of about $2,000, and for that reason was not entitled to recover to the full extent of her loss. An exception was taken to the admission of such evidence. We think the testimony should have been excluded and that the objection thereto was well taken. When an action is brought against a wrong-doer, he is not entitled to have the damages consequent upon the commission of his wrongful act reduced by proving that the plaintiff has received compensation for the loss from a collateral source wholly independent of himself. This doctrine is well established by the authorities and is applicable to the case in hand. *Suth. Dam.*

(2d ed.), § 158, and cases there cited. The cases on this topic are collated in *Brabham* v. *Baltimore and Ohio Railroad Co., supra*.

Next, it is argued that the verdict is contrary to the weight of the evidence.

There is no merit in this contention. There was ample testimony to the effect that the station platform was in a defective condition and illy lighted. The platform was worn, in that some of the boards were projecting above the other boards, and some of the boards had knots which were projecting above the knot holes; that the deceased was walking along on the platform, which is about one hundred and five feet in length and six feet in width, the edge of which platform is within two and a half feet of the first rail of the westbound car track and is unguarded, and he had walked to the edge of the platform, where he tripped over one of the projecting boards or knots, and fell upon the tracks, when the defendant's car came along and was, as estimated by witnesses, fifty feet or more away from the place where the plaintiff's decedent was lying, and ran over him. It is, however, a matter of no importance, under the facts of the case, as to the distance the car was away from the place where the plaintiff's decedent was lying after he fell from the platform, for the jury was warranted in finding from evidence that he fell from the platform to the tracks below, by reason of a defect in the defendant's platform.

It is further argued by defendant's counsel, under reasons four and five, that the defendant was harmed in its defense by the trial judge excluding the following questions put to Max Oster, the plaintiff's witness, by the defendant's counsel on cross-examination: "*Q.* I ask you whether or not at that time you formed an opinion as to whether that man was drunk or not?" And, again, after the witness had his attention called to a statement made by him in writing to a representative of the defendant and which was read in the presence of the jury, and in which the witness stated, among other things, "the man was steady on his feet, but he was talking so loud I thought he was intoxicated;" and was

asked whether that was not the fact the witness answered: "That is the fact, because he was talking loud, and that is what it was in my mind, because if I said that, if I talk to a woman, I no talk so loud." This answer was followed by the question: "Do you still think so?" and, being objected to, the objection was sustained. But even if the rulings of the trial judge, in excluding the questions, were erroneous we perceive no harm done to the defendant, because the witness was permitted to answer the question immediately following the excluded one, which was: "At the time that you made this statment on February 7th, 1923, about two months after this accident, did you then think this man was drunk." "*A.* That is what I thought, because he was talking loud—that is what I told the lawyer when he took my statement." "And you still think so?" "*A.* I still think so, because he was talking loud—that's all the question was." So, it is quite apparent if there was an erroneous ruling, in excluding the questions previously put to the witness on cross-examination, its alleged harmful effect, if any, was done away with by the subsequent questions and answer put to the witness by defendant's counsel.

The ground urged for a new trial under point seven of defendant's brief is purely hypercritical. It is argued that because the trial judge in his charge to the jury, in speaking on the duty of the defendant in relation to the construction and maintaining of its station platforms, said that it was its duty to construct a station safe for its passengers; that this, in effect, was tantamount to a charge that the defendant was an insurer of the safety of its passengers. Generally speaking, it was the duty of the company to construct a safe station platform, and he made it quite clear that the defendant was not an insurer of the safety of the passengers, for he said, in connection therewith: "There is no proof that this station differs in its character from stations in general used by the defendant and other car companies. Negligence must be proved in a cause like the present. That can be done only by showing that the platform is of a design which a reasonably careful person with a reasonable judgment would dis-

approve of being likely to cause accidents to persons using it to and from trains."

We perceive nothing properly objectional in this statement of the legal rule.

Lastly, under reasons eight and nine, it is contended, on behalf of the defendant, that the trial judge erroneously charged as follows: "If you find that the company was not negligent in keeping the platform in a safe condition, still, if you find from the evidence that the deceased fell from the platform, and, while on the track, was killed by the negligence of the motorman operating this car the plaintiff could recover in this case, if the deceased was not guilty of contributory negligence." Now, this motorman was required to use the care and caution that a reasonable prudent man would have used in operating a trolley car of this description at that particular time, and if you find from the evidence that this motorman was negligent and did not stop his car, and that the deceased's death was caused by the negligence of the motorman in not properly managing his car, then the plaintiff can recover, if the deceased was not guilty of contributory negligence.

No exception was taken to the charge. The argument made is that if the deceased came upon the tracks, even though without his own fault, he was a trespasser, and that the defendant company owed him no duty except to abstain from doing him a willful injury. There is no testimony in the case that the tracks of the company are on its private right of way. For aught that appears, it is a street railway extending along a public highway. The case was submitted to the jury upon two theories: (1) Defective condition of the platform, which was alleged to have caused the plaintiff's decedent to trip and fall upon the tracks. (2) The decedent being upon the defendant's tracks in a prostrate position, and, if without his fault, whether the defendant's motorman, if he had been on the alert and in the exercise of ordinary care, would have been able to notice the decedent's perilous position in time to have stopped his car and avoided

injuring him. Counsel of defendant apparently acquiesced in the course taken by the trial judge, for, as has been said, he took no exception to what the court said on the subject.

We think that, under the evidence in the cause, the trial judge charged the proper legal rule applicable thereto. Rule to show cause is discharged, with costs.