JOHN A. G. GRANT, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF OSWALD O. SLADE, DECEASED, PLAINTIFF, v. FRANK E. GROOM, DEFENDANT.

Decided April 12, 1933.

For the rule, *Coult, Satz & Tomlinson.*

Opposed, *James Mercer Davis.*

LAWRENCE, C. C. J. This was a death case tried before me and a jury at the Ocean Circuit. The suit was instituted, under the statute, in behalf of the widow of Oswald O. Slade, who was killed in a collision between the motorcycle on which he was riding and an automobile driven by defendant. The jury found that death was due to the negligence of the latter. It was not seriously argued under the rule taken out by defendant that the verdict was contrary to the weight of the evidence in this regard. It was urged, however, that the award of $2,000 was excessive.

The evidence disclosed that Slade when eighteen years of age married a young girl of fifteen; that they lived together a few months in Florida and that she then returned to the home of her parents; later they were together a month or so in New York where he had obtained employment. She again went back to her parents and it did not appear that they had lived together at any time thereafter. There was no child of the marriage. It was admitted that a year and a half after young Slade's death she had remarried and that she was living with the second husband at the time of the trial. She did not attend it, owing, it was said, to illness, with the result that there was no proof offered as to the financial contribution deceased had made to her, other than the presumption of maintenance while they were living together, nor was there any proof that he had provided for her otherwise or that any steps had been taken to require him to provide for her. The inference is that the separation was voluntary. At the time of his death he was earning $30 a week as a clerk, and there was testimony to the effect that he had averaged that sum during the preceding year, although before that it appeared that he had been irregularly employed. While this may have accounted in part for the separation and the return of the wife to her parents, it was stated at the trial that it was really due to her desire to go back to school and graduate, which she had done.

On the argument of the rule, counsel for defendant insisted that the verdict was excessive, because the jury had failed to consider the fact that the proof of financial support

by the husband was slight; that the parties themselves had not regarded the status of husband and wife as involving any real obligation in that respect, as evidenced by their apparently voluntary separation and the absence of testimony of any affirmative action by or in behalf of the wife to require the husband to provide for her, together with the further fact that after his death she had remarried. Citing *Klemann* v. *Atlantic City Railroad Co. et al.,* 5 *N. J. Mis. R.* 133; 135 *Atl. Rep.* 664, a case, under the Death act, arising out of an accident in which two women were killed, and in which the court said that "we cannot shut our eyes to the probability that each surviving husband may remarry and thus obtain pecuniary benefits akin to those lost through death of the respective wives," and the awards were reduced.

Counsel for plaintiff, however, relied on *Chicago and E. I. R. R. Co.* v. *Driscoll,* 69 *N. E. Rep.* 620 (an Illinois case), in which it was held that in an action by a wife to recover for the wrongful killing of her husband, the remarriage of the wife cannot be considered in mitigation of damages. Also *Philpott* v. *Pennsylvania Railroad Co.,* 175 *Pa.* 570; 34 *Atl. Rep.* 856, resting on the text in 8 *Am. & Eng. Encycl L.* (*2d ed.*) 937; likewise 17 *Corp. Jur.* 1343, § 226, stating that "the rule is general, although not universal, that in an action by a husband for the death of his wife, or by a widow for the death of her husband, the subsequent marriage of the survivor is not to be considered in mitigation of damages," nor, it seems, can a separation be shown.

In *Muradian* v. *Paganessi,* 3 *N. J. Mis. R.* 320; 128 *Atl. Rep.* 158, it was held error to admit evidence of the amount of the insurance collected by the next of kin on the life of the deceased; while in *Hexamer* v. *Public Service Railway Co.,* 4 *N. J. Mis. R.* 184; 132 *Atl. Rep.* 310, the widow's inheritance from the husband's estate, it was said, could not be considered as lessening the amount of her pecuniary loss, extracting from the authorities cited the rule, generally applicable to suits sounding in tort, that "when an action is brought against a wrong-doer, he is not entitled to have the damages consequent upon the commission of his wrongful

act reduced by proving that the plaintiff has received compensation for the loss from a collateral source wholly independent of himself."

While trial judges in charging juries as to the admeasurement of damages in death cases depend upon the interpretation of the rule as given in *Hackney* v. *Delaware and Atlantic Telephone Co., 69 N. J. L.* 337; 55 *Atl. Rep.* 252, by which the jury is permitted to consider the various possibilities there indicated, such as financial reverses, the death of the intestate by course of nature shortly after the accident, and death of the wife before the intestate had he lived, to which may now be added, seemingly, although not definitely stated, the probable remarriage of the surviving spouse (*Klemann* v. *Atlantic City Railroad Co., supra*), particularly, it appears, where young people were involved, it is recognized that the application of the rule, so interpreted, is not easy, since it is also said that the jury may weigh not only probabilities but possibilities and to a large extent form their estimate of damages from conjectures and uncertainties, in order to determine what sum will compensate for the "deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased." *Harris* v. *Johnson, 6 N. J. Mis. R.* 700; 142 *Atl. Rep.* 647. It may thus be said that the matter rests largely within the province of the jury. Unless, therefore, the action of the body appears clearly arbitrary and the sum awarded manifestly excessive, the reviewing court will not disturb the verdict. In the present case, considering the age of deceased, at the time of his death, and that of his widow, with the average life expectancy of each, and his potential duty to provide for her, had he not been killed, it does not appear that the verdict rendered by the jury offends in either aspect. It can hardly be said that an award of $2,000 in a death case, even such as this, is so clearly excessive as to require reduction. The rule to show cause will be discharged.