JANE DANSKIN, ADMINISTRATRIX, &c., OF JAMES F. DANSKIN, DECEASED, PLAINTIFF, DEFENDANT IN ERROR, v. THE PENNSYLVANIA RAILROAD COMPANY, DEFENDANT, PLAINTIFF IN ERROR.

Submitted March 25, 1912—Decided June 19, 1912.

1. Plaintiff's intestate, driving a baker's wagon along a country road, attempted to cross a railroad line and was killed on the further track by a passing train. It appeared that by reason of obstructions to the view the train could not be seen until the horse was nearly on the first track. Evidence examined, and—*Held* to present a jury question as to contributory negligence of deceased in not stopping his wagon before reaching a point where the train was visible, so as to check the noise of the wagon and horse in motion and thereby be enabled to listen more effectively for approaching trains.

2. In connection with this question, evidence of the amount of noise usually made by the same wagon under normal conditions was competent.

3. The testimony of witnesses that they did not hear the statutory signals, though negative in character, is not overcome by positive evidence of other witnesses that such signals were given, if the former were in a position where they would in all likelihood have heard the signals if given.

4. Requests to charge that deceased was required "to exercise the highest practicable degree of care" and that "the difficulty of seeing or hearing * * * does not excuse a traveler on the highway from making the highest practicable use of his faculties"—*Held* to have been substantially covered by the charge as delivered.

5. In charging the jury on the measure of damages for pecuniary injury by reason of the death of deceased, the court said: "What the plaintiff is entitled to recover is a capital fund which will represent the present value of all the pecuniary loss which will fall upon the widow and next of kin; in other words, such sum as, with interest for the period of such expectancy, would equal the amount which the widow and next of kin would have received by the continuance of the life of the deceased. But in this connection you should remember that eight years and seven months have elapsed since Mr. Danskin's death, and if you believe that his expectancy of life would equal or exceed that number of years and months, no such rebate of interest as I have mentioned should be made for that period." *Held*, that while this was incorrect, the error was favorable to defendant in limiting the amount recoverable to less than what plaintiff was legally entitled to.

6. In suits for damages under the Death act, where a considerable part of the estimated period of expectancy of pecuniary benefit has already elapsed, the proper rule is to assess the pecuniary benefit that would have accrued during the time already elapsed, with interest, and add to it the present value of the pecuniary benefit that would have accrued during the remainder of the total period of expectancy.

On error to the Supreme Court.

For the plaintiff in error, *Alan H. Strong.*

For the defendant in error, *Edmund Wilson,* attorney-general.

The opinion of the court was delivered by

PARKER, J. This case has been tried three times. On the first trial there was a verdict for the plaintiff against the present defendant and its co-defendant, the New York and Long Branch Railroad Company, and the entire judgment was reversed because of an error with respect to the liability of the other company. *Danskin* v. *Pennsylvania Railroad Co.,* 47 *Vroom* 660.

The second trial resulted in a nonsuit on the ground that contributory negligence was shown, which was held by the trial judge to be a court question, but was considered by this court to be a question for the jury. *S. C.,* 50 *Vroom* 526. We there held that, assuming a legal duty rested upon the deceased to stop before clearing the obstructions to his vision in order to listen for the sound of a train, the proof did not establish conclusively that the deceased failed to stop, but that even if the evidence did tend so to indicate, the jury were entitled to entertain the presumption of due care on the part of the decedent, and that it was, therefore, not established as a court question that he did not stop to listen before he was able to see.

We further held that if he was not negligent in failing to stop before reaching a point where he could see, he could not be held guilty of contributory negligence as a court question

524	COURT OF ERRORS AND APPEALS.

Danskin, Adm'x, v. Penna. R. R. Co.	*83 N. J. L.*

at and after that time, because "by the time he cleared the woods so as to enable him to see an approaching train, his horse was on the first rail of the first or southbound track, and only about twelve feet from the northbound track." 50 *Vroom* 527.

The uncontradicted evidence on the third trial seems to establish that the deceased was driving his bakery wagon on a jog trot and kept up this gait until he reached the track. It was, therefore, proper to find as a court question that he did not stop before reaching the track, and the further question then results as to whether as a court question he ought to have stopped to listen for the train before reaching a position where he could see the train. This is the first question now argued before us, and the ground on which it is put is that inasmuch as the wind was toward the train and the horse was trotting on a gravel road, and the wagon had iron tires on the wheels and was full of pans and tin plates, and was equipped with sliding doors and other appliances calculated to make a rattling noise, therefore as a court question the wagon must have made so much noise when in motion over the road in question as to prevent deceased from hearing what, if he had stopped, he must have heard.

We are cited to the case of *Merkle* v. *New York, Lake Erie and Western Railroad Co.,* 20 *Vroom* 473, where the driver had in his wagon a number of empty beer bottles in boxes or crates, and the rattling of these bottles by the motion of the wagon made such a noise as to prevent hearing the approaching train; to the case of *Central Railroad Co.* v. *Smalley,* 32 *Id.* 277, where this court took judicial notice that a moving coal train was accompanied by the usual roar and rumble, which must have greatly hindered a person in its immediate vicinity from distinguishing other sounds (*Id.* at *p.* 279); to *Conkling* v. *Erie Railroad Co.,* 34 *Id.* 338, where the wagon was an ice wagon with scales, ice tongs and other utensils within, which caused considerable noise; and, finally, to *Keyley* v. *Central Railroad Co.,* 35 *Id.* 355, where the plaintiff was said by this court to have been traveling with undue speed, hurrying, in fact, over the railroad tracks,

"utterly ignoring the fact that the noise of his horse's hoofs and the rattle of his iron-bound wheels in their contact with the planks and iron tracks he was crossing must necessarily interfere with his ability to hear an approaching car which he could not see."

Every case differs in its circumstances and must be tested by its own peculiar characteristics.

Returning to the present case, we note that some of the assertions of fact relating to the condition of the wagon and of the road are not borne out by the testimony, and some of the inferences are jury inferences. The so-called gravel roads of that locality are very smooth. The testimony as received in the case was that there were no tin pans or plates in the wagon, but that the pies, &c., were arranged on the familiar paper plates, which made no noise; and that the racks were so arranged that everything was held tightly in place and had no opportunity to rattle. The force of the wind is not given, although it was from the northwest and the train was approaching from the south.

The proposition now is that we should find, and that the trial judge should have found, as a court question, that the train coming up against the wind, or the crossing whistle which defendants testified was blown, would have been heard by the deceased when listening from his wagon at a standstill, whereas, because the wagon was moving at the time, such sounds were not heard; in other words, that the sense of hearing failed, and that the failure was due to the deceased not stopping.

The question is a close one, and in view of this very fact we are in no position to say that it should have been removed from the domain of the jury; and we therefore hold that, notwithstanding it was satisfactorily shown that the deceased did not stop his wagon to listen before getting on the track, it was still for the jury to say whether he failed to hear the train, and whether such failure was due to the fact that he did not stop, or in other words, that if he had stopped he would have heard it. It may be remarked that the decisions cited from other jurisdictions are for the most

526 . COURT OF ERRORS AND APPEALS.

Danskin, Adm'x, v. Penna. R. R. Co.    83 N. J. L.

part not pertinent on this point, because of the prevalence of the rule that a traveler about to cross a railroad must stop as well as look and listen, which is not the case in this state.

The next point relates to the sufficiency of evidence that the bell was not rung in compliance with the statute. As usual in such cases, the evidence for the plaintiff on this point is mostly, if not altogether, negative, and there is positive evidence on the other side that the bell was rung. But, as we have been obliged to hold in many other cases, so long as the witnesses who say they did not hear the bell were in a position where it may reasonably be considered they would have heard it if it had been rung, the point cannot be removed from the domain of the jury. *Horandt* v. *Central Railroad Co.*, 52 *Vroom* 488, 490.

The next point relates to the admission of testimony of the plaintiff, the widow of the deceased, on the question whether the wagon made much noise when driven under similar conditions. She testified as to the usual methods of the deceased in loading the wagon for his regular deliveries, that he always had bread and rolls in the morning (when the accident happened), and always carried the rolls in baskets, that he had none of the large pans or small pans in the wagon on the occasion in question; and never took pies and cakes in the morning; that she had ridden frequently in the wagon with her husband. The question was then asked, "Have you ridden in it when it had the big pans in and the pies and cakes in? *A.* Yes, sir. *Q.* As the wagon was driving along with the pans in it what noise if any did it make?"

(Objected to. Objection overruled, and exception sealed, but question not answered.)

"*Q.* Mrs. Danskin, my question is whether in riding with your husband, even when he had the big pans in and the cakes and pies, riding along the road or elsewhere, whether there was any rattle or noise in consequence of these pans?"

This also was objected to, and the court raising some question as to its relevancy in view of the testimony that deceased did not have the pans in his wagon, counsel for plaintiff explained that there was some other evidence indicating

that he did have such pans in the wagon when the accident occurred, and the plaintiff was entitled to negative the theory of noise on any hypothesis derivable from the testimony. The question was asked and no exception taken to the ruling. Assuming that the ruling is properly brought before us under the previous exception, we do not think there was any error in the admission of the testimony, but that it was competent for the plaintiff to show the usual and normal behavior of the wagon in the matter of noise, and the jury were entitled to take this into consideration in connection with the conditions existing at the point of the accident in determining whether there was so much noise at that time and place as to prevent the deceased from hearing the roar of the train or the whistle that was blown, and which whistle, it may be remarked, did not comply with the statutory requirements.

It is further assigned for error that the court should have charged as requested, that "It was the duty of Mr. Danskin in approaching this crossing to exercise the highest practicable degree of care, and if he did not do so and his death was caused wholly or in part by the want of such care on his part, the verdict must be for the defendant." And also that "The difficulty of seeing or hearing an approaching train owing to conditions at the crossing does not excuse a traveler on the highway from making the utmost practicable use of his faculties, and it is only after such use has been made without avail that a verdict can be rendered in favor of a person so injured, or his representatives."

Counsel relies upon the cases of *Pennsylvania Railroad Co.* v. *Righter,* 13 *Vroom* 180; *Pennsylvania Railroad Co.* v. *Leary,* 27 *Id.* 705; *Green* v. *Erie Railroad Co.,* 36 *Id.* 301, as requiring the use of this language in a charge where applicable to the situation. The court did charge that "the law does impose on every person the duty, as it was the duty of Mr. Danskin, to exercise such care to avoid an accident as a reasonably prudent and careful man should exercise under the circumstances and conditions at that point."

Also in response to request No. 6, "He was bound as he approached this crossing to look and listen for an approach-

ing train, and to look and listen in such manner as to make looking and listening reasonably effective." And request No. 8, "The greater the difficulty in discovering the danger as apparent from the surroundings, the greater is the degree of care required in approaching a railroad track, and if the circumstances are such that one sense is rendered less reliable the other must be used to a correspondingly greater extent."

An examination of the cases cited by counsel will show that the language in the requests that were rejected and are now urged as a ground of error, has been treated as substantially identical in meaning with the propositions actually charged by the court and above quoted.

The last point argued relates to the portion of the charge bearing on the measure of damages in death cases, and requires for discussion a full quotation of the language of the trial judge. His charge in this regard was as follows:

"It is for you to consider how long you believe Mr. Danskin would have lived; in other words, to calculate as nearly as you can the expectancy of his life. In doing this you should not consider exceptional cases, but should take the average length of life for a person of his age and condition of health; and in reaching the amount of your verdict if you should believe that Mr. Danskin would have lived a certain number of years and would have expended a certain amount each year on his family, it would not do to multiply this amount by the number of years and say that is the damage, because his family would then have in a lump sum at this time all that the husband and father would have turned over to them during the whole period of his life, which you can readily see could be put at interest and with the interest would amount to much more than he at the salary he was earning at the time of his death would have brought in. As has been said, 'What the plaintiff is entitled to recover is a capital fund which will represent the present value of all the pecuniary loss which will fall upon the widow and next of kin.' In other words, such sum as, with interest for the period of such expectancy, would equal the amount which the

widow and next of kin would have received by the continuance of the life of the deceased.

"But in this connection you should remember that eight years and seven months have elapsed since Mr. Danskin's death, and if you believe that his expectancy of life would equal or exceed that number of years and months, no such rebate of interest as I have mentioned should be made for that period.

"You should also take into consideration the ages and condition of health of the widow and children, and limit your verdict not only to the expectancy of life of the husband but to that of the wife and children and the length of time they would be entitled to enjoy his bounty, provided, however, that such time should not exceed the expectancy of the decedent's life."

The criticism on this we also quote from the brief of counsel.

"The charge so excepted to is plainly erroneous.

"The substance of it is that the verdict should represent a capitalization of all that the widow and next of kin would have received if the deceased had lived out his expectancy, but that in arriving at the present value no rebate should be made for the time that has elapsed since the death occurred, if the jury find that he would have lived that long.

"Thus if the jury found that Danskin would have lived twenty years and his family would have received an average benefit of $1,000 per year, they should find the present value of the entire $20,000, but in so doing should make no rebate of interest for eight years and seven months of the expectancy which have now elapsed.

"The vice of the charge as given is that it directs the present worth to be ascertained of the entire pecuniary loss, and by excluding any rebate for the time past the entire sum (say $20,000 according to the above illustration) is treated so far as that period is concerned as already earned." .

Viewing the matter for purposes of convenience and illustration only, in the manner suggested by counsel for plaintiff in error, as a fixed benefit of $1,000 per year to the next

of kin, to run for a period of twenty years, and thus dis-
regarding the contingencies of death of beneficiaries, de-
crease of earning power, and so on, we find by consulting
the annuity tables that the present value of an annuity of
$1,000 per year for twenty years, on a basis of five per cent.
is $12,462, which would represent the amount recoverable at
the time of death of the deceased.

But eight years and seven months, or say nine years, hav-
ing elapsed, and the next of kin having received nothing in
that time, the correct rule would be to award them (still on
the foregoing hypothesis) the deferred payments of $1,000
per year for nine years and interest thereon, and the present
value of an annuity of $1,000 per year for the remaining
eleven years of the time.    This would work out thus:

Deferred payments and simple interest, $10,800 00
Present value of future payments.... 8,307 00

$19,107 00

If the judge had charged the rule of damages in this form
it would have been correct.  At the request of defendant he
charged, as we think too favorably to defendant, that no in-
terest should be allowed for the elapsed period; so that the
above total would be reduced by $1,800, and stand at
$17,307.   The question is whether under any fair construc-
tion of the charge as delivered the jury would be justified
in finding an amount relatively greater than this hypothetical
$17,307.

The complaint of counsel seems to be that the charge di-
rects the present worth of what would correspond to the
$20,000, payable periodically during the eleven years re-
mainder of the expectancy, to be ascertained as of the time
of the trial, but this certainly does not injure the defendant,
for, as we have already seen, the application of a correct
rule would award $19,107 and of the rule as we understand
the judge to have laid it down would award $17,307; while
a calculation of the present value of $20,000, payable in
equal annual installments over the remaining eleven years of

the hypothetical expectancy would be the present value of an annuity of $1,818.18 for eleven years, which is shown by the tables to be $15,103.62, being about $4,000 less than the sum ascertainable by the correct rule, and $2,000 less than the sum ascertainable by the rule as we interpret the judge's charge. The language of the charge is something of a puzzle in the matter of interpretation, and calls to mind the old case of *Tuttle* v. *Howell*, 2 *C. E. Gr.* 176, 540; but under any rational interpretation of the charge it is clear to us that no legal injury was done to the defendant notwithstanding a misapprehension of the proper rule, because the result of the rule as charged would be to award the plaintiff less than she was legally entitled to.

We find no error in the record, and the judgment should be affirmed.

