## PENNSYLVANIA R. CO. v. CASH.

(Circuit Court of Appeals, Third Circuit.   December 2, 1912.)

No. 1,678.

1. RAILROADS (§ 350*)—CROSSING ACCIDENT—HORSE-DRAWN VEHICLE—DUTY TO STOP.

In New Jersey, a traveler in a horse-drawn vehicle is not obliged to stop before crossing the track of a steam railroad at grade, on pain of being charged with contributory negligence as a matter of law.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

2. RAILROADS (§ 350*)—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for death of a traveler while traversing a railroad crossing at grade in an ice wagon, whether he was guilty of contributory negligence in failing to stop before driving on the track *held* for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Action by Phebe A. Cash, as administratrix, against the Pennsylvania Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Alan H. Strong, of New Brunswick, N. J., for plaintiff in error.
Edmund Wilson, of Red Bank, N. J., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. The plaintiff in this case recovered damages for the death of her husband, who was killed in June, 1910, by a passenger train of the defendant at Villa Park, a small and scattered settlement about half a mile south of Spring Lake station. The principal contest at the trial was upon the questions: (1) Whether the deceased stopped before reaching the tracks; and (2) if he failed to stop, whether under the circumstances the court should declare such failure to be negligence as a matter of law. Both questions were submitted to the jury in a charge of which no complaint is made, and in substance the only error assigned is the refusal of the trial judge to direct a verdict for the defendant.

The facts are as follows, nearly all being now undisputed: At the place of collision the defendant's tracks run north and south, crossing Ocean avenue at a right angle. The deceased, who was well acquainted with the locality, was driving from west to east in an ice wagon of the usual type, drawn by two horses, equipped with scales, several tongs, and an ax, and carrying 600 or 700 pounds of ice. The train that struck him came from the north at a speed of 25 miles an hour, and his view in that direction was wholly obstructed for nearly 100 feet.

---

* For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The obstruction was a bank topped with shrubs and trees that began to rise on his left hand 100 feet west of the crossing, and did not drop away so as to afford a clear view north until a point 15 feet from the south-bound track had been reached. The avenue was a smooth gravel road 50 feet wide, and the horses walked continuously from a house about 200 feet west of the crossing. Two witnesses testified that he did not stop, although he was leaning forward from the north side of the wagon, apparently making an effort to listen or look for the approach of a train. The crossing had neither gates nor flagman, and it was disputed whether any signal was given either by bell or whistle. (This dispute is settled by the verdict.) Several months after the accident a similar wagon, similarly equipped and loaded, was driven at a walk along the same approach, in order to test the degree of noise that the wagon might have made.

[1] In New Jersey, a traveler in a horse-drawn vehicle is not obliged always to stop the vehicle before crossing the track of a steam railroad at grade. Wise v. Railroad, 81 N. J. Law, 397, 80 Atl. 461. Failure to stop is only one of the facts to be considered in determining the question of contributory negligence, and all the circumstances of a particular case must be taken into account before deciding whether such failure amounts to negligence that should be so declared by the court, or whether it must go to the jury to be considered by them with all the other relevant facts. Sometimes the court has held it sufficient to turn the scale against the plaintiff; sometimes the circumstances have required its submission to the jury. A brief examination of the New Jersey cases relied upon by the defendant may be useful.

In Merkle v. Railroad, 49 N. J. Law, 473, 9 Atl. 680, a judgment of nonsuit was affirmed; the facts being stated as follows:

"The driver of the wagon stopped to deliver goods at a store distant about 56 feet from the railroad track. After finishing that business, he drove on (the horses upon a slow walk) towards and upon the railroad track, and he did not stop until the collision took place. After leaving the store he could not see the approaching train until he came within 6 or 8 feet of the railroad track. The wagon was a closed one, with a high tailboard, which could be opened and shut, and it had curtains, with an opening on the side where the driver sat. The curtain at that place was up at the time of the accident. In the wagon were 74 or 75 boxes, in which were about 1,800 loose beer bottles. The boxes were in layers; one layer being upon the floor of the wagon, and the others piled upon it. As the wagon went along the bottles rattled with its motion. The noise which they made probably prevented the driver from hearing the sound of the approaching train. Inasmuch as he could not protect himself, if there was danger, by the use of his eyes, it was incumbent upon him, in the exercise of ordinary prudence, to make use of his sense of hearing. He must have known that the rattling of the bottles behind him in the wagon might and probably would prevent him from hearing the noise of an approaching train. He could have stopped that noise by stopping the wagon, but he did not do so. Inasmuch as he could not see an approaching train at any considerable distance from the track, ordinary prudence required him to stop when he was near enough to the railroad to ascertain, at least by listening, whether there was danger or not. But he appears to have used no precaution whatever, not even stopping the noise of the wagon, which was completely under his control. The judgment should be affirmed."

It will be observed that the decision is controlled by the ascertained fact—how ascertained, the report does not inform us—that the noise made by the rattling bottles might, and probably did, prevent the driver from hearing the sound of the approaching train.

In Railroad Co. v. Smalley, 61 N. J. Law, 277, 39 Atl. 695, the plaintiff was driving a sleigh northwardly along an avenue toward a crossing that was not guarded either by gates or by a flagman. The pertinent facts are these:

"On the west side of the avenue there was a building and a bank of earth with a fence and bushes upon it, which cut off the plaintiff's view of trains in that direction. A coal train in plain sight was moving west along the north track toward the crossing. As the plaintiff reached the crossing and drove upon the south track, which he did without stopping, the caboose of the coal train was just clearing the highway, and was distant from him only a few feet. As the horse came upon the south track the engine of an east-bound passenger train struck and killed him, crushed the sleigh, and seriously injured the plaintiff. Several witnesses testified negatively on behalf of the plaintiff that they did not hear any signal by bell or whistle from the engine of the east-bound train. The plaintiff himself testified that by reason of permanent obstructions he could not see the east-bound train until the horse was on the track. The evidence of [other witnesses] was to the same effect. The plaintiff further testified that he did not hear the east-bound train, and that he heard no bell rung or whistle blown."

That the passing coal train made the usual noise is taken notice of by the court:

"There was no express evidence to show how much noise the coal train made, or, indeed, that it made any noise; nor, under the circumstances, was such evidence necessary. The thing spoke for itself. The court will not ignore common experience. There is no reason to think that the physical conditions were exceptional, or that the phenomenon of an inaudible coal train was a feature of the situation. The conclusion is inevitable that this moving body was accompanied by the usual roar and rumble, which must have greatly hindered a person in its immediate vicinity from distinguishing other sounds."

Under such circumstances the court said:

"The duty of a person who is about to cross a railroad track is to be prudent—to look and to listen, and to do the things that will make looking and listening reasonably effective. If the vision or hearing of such a person is limited by permanent obstructions or disturbances, he should for that reason be cautious; if his vision or hearing is limited by transient obstructions or disturbances, under circumstances which oblige him to rely on the sense thus limited, he should wait until it has again become efficient to warn him of peril. One sense, if well used, may give warning enough. To go on a railroad crossing in the way of a train which can be neither seen nor heard, but which would be either visible or audible except for some temporary hindrance to sight or hearing, is to be negligent. These are rules of good sense, and therefore of law."

It was therefore concluded that:

"The plaintiff went forward into a danger which permanent obstructions made it impossible to see, and which a passing noise made it difficult to hear. The permanence of the obstructions to sight made hearing his best reliance. A few moments' delay would have given him the full benefit of it. In advancing at once, while circumstances interfered with its efficient exercise, he acted with less prudence than the law exacts"

—and the judgment in his favor was set aside.

Here also appears the definite and controlling fact that the noise of the coal train greatly hindered the plaintiff from distinguishing other sounds.

Conkling v. Railroad, 63 N. J. Law, 338, 43 Atl. 666, is mainly concerned with the plaintiff's failure to look and listen at the point where an effective observation could be made; but his duty to look and listen with care was said to be accentuated by the following facts:

"He was driving an ice wagon, with scales, ice tongs, and other utensils within, along a macadamized roadway, with his horses on a jog trot, causing considerable noise, which might interfere with his hearing the usual signals. His wagon was a covered one, with curtains down, and a slanting hood over the front, with a glass in the curtains on either side. Under such circumstances the duty of the traveler on the highway does not stop with looking and listening; but he must exercise care to select a position from which an effective observation can be made, and he must also exercise care to make the act of looking and listening reasonably effective. * * *

"It must be observed, too, that the plaintiff did not halt his horses at all, so as to increase his opportunity for hearing such noises or signals as might indicate the approaching of a train."

It will be noticed that the existence of "considerable noise" is stated by the court to be one of the important facts in the case.

In Keyley v. Railroad, 64 N. J. Law, 355, 45 Atl. 811, the following extracts from the opinion show the facts upon which the court relied to affirm a judgment of nonsuit:

"The plaintiff in error was properly nonsuited in the court below for his contributory negligence. That negligence consisted in his attempting to cross the railroad tracks with undue speed and without stopping at a dangerous surface crossing on First street, in the city of Elizabeth, near the works of the Singer Sewing Machine Company. That crossing was made especially dangerous by the large number of railroad tracks (the evidence says between 15 and 20) at that point, and by the fact that coal and box cars were standing on the second track, so as to prevent the plaintiff from seeing a coal car slowly moving on the third track he was about to cross."

After speaking of the plaintiff's "folly * * * in blindly driving his horse over two railroad tracks and into a place of danger, where he could not see nor hear the moving car until, to use his own words, it was 'right on top' of him," the court goes on:

"The plaintiff seems to have approached this dangerous crossing under the idea that, the less he was able to see and hear of the moving cars on his front, the more he should hurry over the railroad tracks, utterly ignoring the fact that the noise of his horse's hoofs and rattle of his iron-bound wagon wheels in their contact with the planks and iron tracks he was crossing must necessarily interfere with his ability to hear an approaching car which he could not see. Perhaps the fact that he had safely driven over these tracks every day for the previous five months led the plaintiff into this imprudence. However that may be, it is apparent that he courted the disaster that happened to him, and that for the law to have awarded him damages, under the circumstances, would have been to offer a reward for reckless driving over the railroad crossings of the state."

In this case, also, it is evident that the court is acting upon the ascertained fact that so much noise existed as to interfere necessarily with the plaintiff's ability to hear an approaching train.

[2] The situation now before us differs in the important particular that the existence of sufficient noise to interfere with the ability of the

deceased to hear the approaching train was a matter of dispute that was necessarily carried to the jury by the evidence on that subject. Two witnesses testified concerning the amount of noise made by the test wagon, and from their testimony the jury might conclude either that a good deal of noise was made or only very little. His ability to hear other sounds may, or may not, have been sensibly affected. The controversy so nearly resembles Danskin v. Railroad (N. J.) 83 Atl. 1006 (in which all the foregoing decisions are considered), that we feel bound to give that case much weight. For present purposes, we may say here, as was said there, that the evidence shows satisfactorily that the deceased did not stop his wagon to listen before going on the track; and (upon that assumption) we may also proceed to say that, while the question is close, "it was still for the jury to say whether he failed to hear the train, and whether such failure was due to the fact that he did not stop, or, in other words, that if he had stopped he would have heard it." As already stated, there was evidence that no bell was rung or whistle blown, and, although this was denied, the subject was for the jury. If no signal was given, its absence would properly have some effect on the question, whether or not the deceased was negligent in failing to stop. Moreover, there was some evidence that the obstructions to sight might obstruct the hearing also; and we do not think that the court could have said, as a matter of law, either that signals were given and that the deceased would have heard them if he had stopped, or (in the absence of signals) that if he had stopped he would have heard the noise of the approaching train. In other words, it was for the jury to decide—even on the assumption that no stop was made—whether a stop would have enabled the deceased to hear. And, of course, if the assumption be unwarranted, and if the evidence bearing upon his failure to stop was for the jury, and not for the court, it is perfectly clear that the rulings complained of were correct. We have considered the case in the aspect most favorable to the defendant.

To avoid misapprehension it may be well to add that the decisions of this court in Railroad v. Maidment, 168 Fed. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794, and Brommer v. Railroad, 179 Fed. 577, 103 C. C. A..135, 29 L. R. A. (N. S.) 924, and Railroad v. Henderson, Id., are dealing with the comparatively new subject of motor vehicles; and (as we think is evident) were not intended to affect the subject of vehicles drawn by horses. Neither has it been necessary to consider, or to give any weight to, the Railroad Crossing Act of New Jersey, approved April 12, 1910.

The judgment is affirmed, with costs.