254 F.2d 132
 Dorothy FRASIER, as Administratrix de bonis non of the Goods, Chattels and Credits which were of Leroy Walthour, deceased, Plaintiff-Appellee,
v.
PUBLIC SERVICE INTERSTATE TRANSPORTATION COMPANY, Defendant-Appellant, and
Michael W. Isel, Defendant.
 No. 157.
 Docket 24851.
 United States Court of Appeals Second Circuit.
 Argued January 17, 1958.
 Decided April 16, 1958.
 
 Levy & Harten, New York City (Carl K. Harten, New York City, of counsel, and Abraham N. Levy, New York City, on the brief), for plaintiff-appellee.
 Philip J. O'Brien, New York City (John G. Coleman, New York City, of counsel), for defendant-appellant.
 Before MEDINA and MOORE, Circuit Judges, and GALSTON, District Judge.
 MEDINA, Circuit Judge.
 
 
 1
 Frasier's intestate, a New York resident, was killed as the result of a collision between his car and a Public Service Transportation Company bus in New Jersey on December 22, 1950. Frasier, appellee herein, recovered a jury verdict of $115,000 in the District Court for the Eastern District of New York, from which Public Service appealed. We affirmed in an opinion filed on May 3, 1957, 244 F.2d 668. Shortly thereafter appellee made a motion in the District Court to amend the judgment by adding to it interest at 6% annually from December 23, 1950 to May 21, 1956. This motion was granted and a judgment was entered for $37,904.20 against appellant. Thereafter, Public Service moved to vacate the judgment thus entered and, upon the denial of that motion, this appeal was taken from the order directing the entry of such judgment, from the judgment itself and from the order denying the motion to vacate.
 
 
 2
 In limine we are faced with the thorny congeries of questions relating to Rule 60(a) and (b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. and the jurisdiction of the District Court to entertain the application to add interest to the judgment, due in part to the fact that this Court had already affirmed the judgment on appeal and our mandate went down long prior to the attempt to increase appellee's recovery. See Moore's Federal Practice, par. 60.30 [2], Vol. 7, pp. 339-40. As we have no doubt that the allowance of interest constitutes error, we think it not necessary to pass on the jurisdictional issues.
 
 
 3
 The common law did not recognize any cause of action arising from the death of a person due to the negligent or wilful act of another, Prosser, Torts (2d ed. 1955) 709-10; 16 Am.Jur., Death § 44, but statutes enacted in each of the American states, see statutes collected in Note, 39 Iowa L.Rev. 494, 495 n. 5 (1954), and constitutional provisions adopted in some of the states, see 16 Am. Jur., Death § 51, have created a right to sue and recover damages based on such a wrongful death.
 
 
 4
 The constitutional provisions relating to wrongful death actions differ in that some specifically confer the right of recovery, e. g., Ky.Const.1956, § 241, while others prohibit the abrogation of this right, and also forbid any limitation of the amount of damages recoverable. E. g., N.Y.Const.1954, Art. I, § 16. Similarly, the state statutes creating an action for wrongful death differ in many respects, the most important differences being found in their provisions regarding who may bring the action, the time limitation on bringing the action, the method of measuring damages, the method of distributing damages, and the limitation on the amount of damages recoverable. See, generally, Rose, Foreign Enforcement of Actions for Wrongful Death, 33 Mich.L.Rev. 545, 587-96 (1935).
 
 
 5
 Because of the differences among the state statutory provisions regarding the damages recoverable in a wrongful death action, the amount actually recovered is often dependent on the statute under which the action is brought. Thus, statutes in several states limit the recovery by specifying the maximum sum recoverable in an action brought for the wrongful death of another, e. g., Me. Rev.Stat. (1954) c. 165, § 10 ($10,000); Va.Code (1950) § 8-636 ($25,000), while, on the other hand, in several states a substantial recovery, at the least, is assured by those statutes which require a minimum award in certain cases. E.g., Mass. Ann.Laws (1955) c. 229, § 2A ($2,000 for death caused by railroads, street or electric railways); Mo.Rev.Stat. (1949) § 537.070, V.A.M.S. ($2,000 in certain cases). In addition, the statutory provisions which establish the measure of damages applicable to wrongful death actions, such as the pecuniary loss suffered by the beneficiary, e. g., N.Y. Decedent Estate Law, McKinney's Consol.Laws, c. 13 (1949) § 132; Me.Rev.Stat. (1954) c. 165 § 10, the pecuniary loss to the decedent's estate, e. g., N.H.Rev.Laws (1942) c. 355, § 12, the award of punitive damages, e. g., Ky.Rev.Stat. (1956) § 411.130; Mass.Ann.Laws (1955) c. 229, § 2C, or the award of "fair and just" damages, e. g., Va.Code (1950) § 8-636; W.Va. Code (1955) § 5475 (55-7-6), often have a direct bearing on the amount of damages actually recovered.
 
 
 6
 The New Jersey wrongful death statute involved in the case at bar provides that, within two years of the death of the decedent, the executor or administrator of the decedent's estate can institute suit to recover damages resulting from the wrongful death. N.J.S.A. (1952) §§ 2A:31-1, 2A:31-2, 2A:31-3. The jury is to determine the amount of the recovery and "may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death to the persons entitled to any intestate personal property of the decedent." N.J.S.A. (1952) § 2A:31-5. Acting pursuant to this provision, the jury, when assessing damages in a wrongful death action, may include in its verdict interest on that portion of the damages which is awarded for the period from the date of death until the trial, Danskin v. Pennsylvania R. Co., 83 N.J.L. 522, 528-531, 83 A. 1006, 1008-1009, and also discount to its present value any sum awarded to cover prospective earnings of the decedent. Kappel v. Public Service Ry. Co., 105 N.J.L. 264, 144 A. 182; Hackney v. Delaware & A. Tel. & Tel. Co., 69 N.J.L. 335, 55 A. 252.
 
 
 7
 Turning now to the case at bar, since federal jurisdiction is based on diversity of citizenship, the New York conflict of laws rule is applicable. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Under New York law, the award of interest, as well as the award of all damages in a wrongful death action, is controlled by the statute of the place where the injury occurred, and not by the New York statute. Kiefer v. Grand Trunk Ry. Co., 12 App.Div. 28, 42 N.Y.S. 171, affirmed 153 N.Y. 688, 48 N.E. 1105; Maynard v. Eastern Air Lines, Inc., 2 Cir., 178 F.2d 139, 13 A.L.R.2d 646. The New Jersey statute makes no provision for the recovery of interest on the jury's verdict, and there is no New Jersey authority to support such a construction of the statute.
 
 
 8
 On the other hand, a New York court, construing and applying a Canadian death statute with provisions similar to those of the New Jersey Act in that the jury, and, in the Canadian statute, the judge, were to determine the amount of recovery and no provision was made for interest, held that an award of interest from the date of death until the entry of judgment was improper. Kiefer v. Grand Trunk Ry. Co., supra. Accordingly, it is clear that, in the case at bar, no interest could lawfully be compounded on the verdict. It was the sole function of the jury under the New Jersey statute to fix the amount of damages, and any contention urged by the appellee should have been asserted before, or just after the trial judge instructed the jury, or, in the event of some special circumstance such as questions by the jury on the subject, before the conclusion of the deliberations of the jury and the bringing in of their verdict. See Danskin v. Pennsylvania R. Co., supra.
 
 
 9
 Accordingly, the judgment and both orders above described are reversed and the application for the addition of interest to the original judgment is denied.
 
 
 10
 MOORE, Circuit Judge (concurring).
 
 
 11
 I concur but believe that there is an additional ground, namely, that the District Court had no power to modify the judgment. The original judgment for $115,000 was entered on May 21, 1956, appealed to this court and affirmed, 2 Cir., May 3, 1957, 244 F.2d 668. That judgment has been satisfied.
 
 
 12
 More than a year later, June 20, 1957, plaintiff brought her present motion. There is no support for the claim that the omission of interest from the date of death, December 23, 1950, to the date of the original judgment was a mere clerical error. Any subsequent modification of the judgment, as entered, by motion (particularly by a judge other than the trial judge) would result in an unwarranted revision of the jury's verdict based upon the speculation that the jury intended the $115,000 to be the award as of the date of the injury with interest to be added thereto. But this was not their verdict or their award. Furthermore, the motion to amend this judgment was untimely because it had not been made within one year (see Fed.Rules Civ.Proc. 60(b)). After affirmance on appeal the mandate of this court did not authorize entry of any other judgment except the original one for $115,000 and the District Court was without power to deviate from the amount ordered to be entered.
 
 
 13
 The decisions of this court and the Supreme Court in Briggs v. Pennsylvania Railroad Co., 2 Cir., 1948, 164 F.2d 21, 1 A.L.R.2d 475, affirmed 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403, are pertinent. There the District Court granted plaintiff's motion for the inclusion of interest on a verdict up to the date of the judgment entered upon the mandate of this court. In reversing the court stated (164 F.2d at page 23):
 
 
 14
 "The only judgment which could then lawfully have been entered was, however, one which conformed to the mandate of this court. That directed judgment in the amount of the verdict but made no direction whatever as to interest. When our mandate specifically directs the entry of judgment for a designated amount, the District Court is without power to enter judgment for a different sum."
 
 
 15
 The Supreme Court affirmed in even more sweeping language (334 U.S. at pages 306-307, 68 S.Ct. at page 1040):
 
 
 16
 "* * * It is clear that the interest was in excess of the terms of the mandate and hence was wrongly included in the District Court's judgment and rightly stricken out by the Circuit Court of Appeals. The latter court's mandate made no provision for such interest and the trial court had no power to enter judgment for an amount different than directed. If any enlargement of that amount were possible, it could be done only by amendment of the mandate. But no move to do this was made during the term at which it went down. * * *
 
 
 17
 "The plaintiff has at no time moved to amend the mandate which is the basis of the judgment. That it made no provision for interest was apparent on its face. Plaintiff accepted its advantages and brings her case to this Court, not on the proposition that amendment of the mandate has been improperly refused, but on the ground that the mandate should be disregarded. * * *"
 
 
 18
 The court refused to pass upon the substantive question of whether the plaintiff was entitled to interest under 28 U.S. C.A. § 811, now 28 U.S.C.A. § 1961.
 
 
 19
 Likewise here, regardless of whether the plaintiff was entitled to interest under state law, the District Court had no power to vary from the terms of our mandate. Had plaintiff wished to have the mandate altered, proper procedure required a motion to be made in this court requesting amendment thereof. Powers v. New York Central Railroad Co., 2 Cir., 251 F.2d 813. Even then proof of error or mistake would have been required. Another judge over a year after the trial could not change the jury's award by increasing it, in effect, by $37,904.20 to $152,904.20.