**Ruth M. POLGLASE, etc., et al.**

**v.**

**GREYHOUND LINES, INC., etc.**

**Civ. No. 73–1000–K.**

United States District Court,
D. Maryland.

Sept. 23, 1975.

James T. Barbour, Chevy Chase, Md., Francis J. Ortman, Washington, D. C., for plaintiffs.

Samuel S. Smalkin, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

■ ■ This wrongful death suit was instituted in this Court on October 9, 1973. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.[1] The suit arises out of an accident which occurred in the State of New Jersey on March 8, 1973. The Maryland conflict of laws rule, applicable in this case in this federal Court pursuant to the teachings of *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), provides as follows:

\* \* \* *When wrongful act occurs outside of Maryland.*

(a) *Application of substantive law of another state.*—If the wrongful act occurred in another state, the District of Columbia, or a territory of the United States, a Maryland court shall apply the substantive law of that jurisdiction.

(b) *Maryland court to apply own rules of pleading and procedure.*—Notwithstanding the fact that the wrongful act occurred in another jurisdiction, a Maryland court in which the action is pending shall apply its own rules of pleading and procedure.

Md.Ann.Code *Cts. & Judicial Proceedings* art., § 3–903 (1974). In the light of that statute, New Jersey substantive law governs in this case. *See Debbis v. Hertz Corporation*, 269 F.Supp. 671, 674 (D.Md.1967).

Trial of this case is calendared to take place shortly. In advance of trial, the question has arisen as to whether the plaintiffs, if they prevail herein, will be entitled to the award of prejudgment interest. The answer to that question would seem to turn upon whether such award relates to substance or procedure. No Maryland statutory or case law known to this Court specifically provides that the award of prejudgment interest, *vel non*, in a case such as this, presents an issue of substance rather than of procedure. However, in *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 256 F.2d 946, 952 (4th Cir. 1958), *aff'd*, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959), then Chief Judge Sobeloff wrote:

\* \* \* As this is a civil suit within the diversity jurisdiction of the court, we are, by *Erie R. Co. v. Tompkins*, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, obliged to apply Maryland law as to interest. *Title Guaranty & Surety Co. v. State of Missouri*, 8 Cir., 1939, 105 F.2d 496, 549; *Grand Trunk Western R. Co. v. H. W. Nelson Co.*, 6 Cir., 1941, 116 F.2d 823, 841; *Chesapeake & Ohio Ry. Co. v. Elk*, 4 Cir., 1950, 186 F.2d 30, 36 A.L.R.2d 329.

Additionally, Comment c to section 171 of the Restatement (Second) Conflict of Laws (1971) specifically states:

c. Interest. The law selected by application of the rule of § 145 [i. e., the section setting forth the general principles which govern determination of applicable substantive law] determines whether the plaintiff can recover interest and, if so, at what rate for a period prior to the rendition of judgment as part of the damages for a tort.

*Accord, Busik v. Levine*, 63 N.J. 351, 307 A.2d 571, *appeal dismissed*, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733, (1973), and authorities cited at 307 A.2d at 580–81, including the above quoted Comment in the Restatement.

In his opinion in the *Busik* case written for a majority of the Supreme Court of New Jersey, Chief Judge Weintraub (at 580–81) commented:

What then is "interest"? As we have said, it is compensatory as to the parties and represents "damages" for delay in payment. "Damages" constitute a "remedy." And "remedy" promptly connotes "procedure." 1 Am. Jur.2d, Actions, § 6, p. 546. But in the context of conflict of laws, the

---

1. The plaintiffs are citizens of Maryland. The defendant is incorporated in California and has its principal place of business in Arizona.

majority view is that "damages" go to the substance, i. e., that it would disserve the values involved to apply the law of the forum rather than the law of the place of the wrong.[7]  22 Am.

7. But the answer may be otherwise when the foreign event concerns only citizens of the forum or citizens of States other than the State of injury. See *Pfau v. Trent Aluminum Co.,* 55 N.J. 511, 523–524, 263 A.2d 129 (1970).

Jur.2d, Damages, § 3, pp. 15–16. The Restatement (2d) of Conflict of Laws (1971), §§ 145 and 171, espouses that view. Prejudgment interest may be deemed to be part of the damages occasioned by the initial wrong, although one might say that such interest is a remedy for a second wrong, i. e., the delay in payment. Upon the latter view the situs of that wrong might arguably be the forum. The Restatement (2d) of Conflict of Laws (1971), § 171, comment c, would apply to prejudgment interest the same rule applicable with respect to the basic damages to determine "whether the plaintiff can recover interest and, if so, at what rate for a period prior to the rendition of judgment as part of the damages for a tort."

■ In the *Pfau* case, the Supreme Court of New Jersey indicated (263 A. 2d *supra* at 130–31) that it had "abandoned the old *lex loci delicti* rule for determining choice of law in tort cases" and had "adopted the governmental interest analysis approach", an approach espoused by the authors of section 145 of the Restatement, *supra.* Accordingly, on the facts of a case such as this suit, in which none of the parties have any New Jersey connections and which seemingly involves no New Jersey governmental interests, New Jersey law might, as suggested in *Busik, supra* at n.7, teach that Maryland principles regarding prejudgment interest should govern an award of damages to a Maryland plaintiff in a suit brought in a Maryland

2. Nor does either of those two exceptions appear to have any relevance in this case. See also the discussion in *Pfau v. Trent*

forum against a corporate defendant whose place of incorporation and whose principal place of business are located in neither Maryland nor New Jersey. Under Maryland law "[w]here recovery is for bodily harm, emotional distress, or similar intangible elements of damage insusceptible of precise measurement, the award is presumed to be comprehensive, and an additional allowance of interest is denied * * *." *Robert C. Herd & Co. v. Krawill Machinery Corp., supra* at 952.

■ But Maryland substantive law is not applicable in this case. Maryland adheres to *lex loci delicti* principles, *see Heiserman v. The Baltimore & Annapolis Railroad Co.,* 15 Md.App. 657, 664 n.2, 292 A.2d 140 (1971); *Debbis v. Hertz, supra* at 674; and authorities cited thereat. Thus, once this Court concludes, as it does for the reasons set forth *supra,* that prejudgment interest presents an issue primarily of substance rather than of procedure, Maryland conflicts law instructs this Court to look to New Jersey's "substantive" law regarding prejudgment interest. In so doing, however, this Court does not look to New Jersey's conflicts rule which, if it prevailed herein, might, under *Pfau* cause this Court to look back again from New Jersey law to Maryland law and, as this Court noted in *Debbis, supra* at 682,

* * * result in an application of the doctrine of renvoi, contrary to the principles set forth in the Restatement of Conflict of Laws §§ 7, 8 (1934).[14]

14. Section 7 of the Restatement of Conflict of Laws rejects application of the renvoi except for two situations listed in Section 8. No reason is perceived why there should be any exceptions. Almost all writers oppose application of the renvoi. [E. Stimson, Conflict of Laws 77 (1963)].

The two exceptions provided in the Restatement have no relevance to this instant case.[2]

*See also* the Restatement (Second) of Conflict of Laws §§ 7, 8 (1971), and com-

*Aluminum Co.,* 263 A.2d *supra* at 136–37, with regard to non-application of renvoi.

ments (g), (h), and (j) to section 8 thereof. In sum, this Court, under Maryland's conflict approach, looks to New Jersey law as to prejudgment interest.

Prior to 1972, the law of New Jersey with regard to prejudgment interest was as set forth in *Frasier v. Public Service Interstate Transportation Co.*, 254 F.2d 132, 134–35 (2d Cir. 1958), by Judge Medina:

> The New Jersey wrongful death statute involved in the case at bar provides that, within two years of the death of the decedent, the executor or administrator of the decedent's estate can institute suit to recover damages resulting from the wrongful death. N.J.S.A. (1952) §§ 2A:31–1, 2A:31–2, 2A:31–3. The jury is to determine the amount of the recovery and "may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death to the persons entitled to any intestate personal property of the decedent." N.J.S.A. (1952) § 2A:31–5. *Acting pursuant to this provision, the jury, when assessing damages in a wrongful death action, may include in its verdict interest on that portion of the damages which is awarded for the period from the date of death until the trial, Danskin v. Pennsylvania R. Co.,* 83 N.J.L. 522, 528–531, 83 A. 1006, 1008–1009, and also discount to its present value any sum awarded to cover prospective earnings of the decedent. *Kappel v. Public Service Ry. Co.*, 105 N.J.L. 264, 144 A. 182; *Hackney v. Delaware & A. Tel. & Tel. Co.*, 69 N.J.L. 335, 55 A. 252. [Emphasis supplied.]

*See also Meehan v. Central Railroad Co. of New Jersey*, 181 F.Supp. 594, 607 (S.D.N.Y.1960).

However, New Jersey law with regard to prejudgment interest would appear to have been reshaped in 1972 by the promulgation by the Supreme Court of New Jersey of Rule 4:42–11(b), which governs civil practice in the Superior Court, County Courts and Surrogate's Courts of that State, and which was, in *Weiman v. Ippolito*, 129 N.J.Super. 578, 324 A.2d 582, 587–88 (1974), held applicable to actions for wrongful death brought pursuant to N.J. Stat. 2A:31–1 *et seq.* That Rule currently provides as follows:

> \*　\*　\*　\*　\*　\*
>
> (b) *Tort Actions.* Except where provided by statute with respect to a public entity or employee, *the court shall, in tort actions*, including products liability actions, *include in the judgment interest at 8% per annum on the amount of the award from the date of the institution of the action or from a date 6 months after the date of the tort, whichever is later,*[3] provided that in exceptional cases the court may suspend the running of such prejudgment interest. \*　\*　\*
>
> Note:[4] Adopted December 21, 1971 to be effective January 31, 1972. Paragraph (b) amended June 29, 1973 to be effective September 10, 1973; paragraphs (a) and (b) amended November 27, 1974 to be effective April 1, 1975.

(Emphases supplied.) It would appear that the above-quoted provisions of the New Jersey rule are fully applicable to the within action commenced prior to 1975 provided that the judgment herein is rendered subsequent to that date. *See Weiman v. Ippolito, supra*, 324 A.2d at 587.

Accordingly, pursuant to Rule 4:42–11(b), and in the absence of any "exceptional" circumstances in this case

---

3. Six months after the date of the alleged tort, *i. e.*, March 8, 1973, would seemingly be September 8, 1973, one month and one day before the date this suit was instituted. Thus, the later date, *i. e.*, October 9, 1973, is applicable.

4. That Note was apparently inserted after the text of Rule 4:42–11(b) by the publishers of the Rules Governing the Courts of the State of New Jersey.

known to this Court, this Court will expect to instruct the jury to include in any judgment rendered herein "interest at 8% per annum on the amount of the award" dating from October 9, 1973.[5]