841 F.2d 1122
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John Joseph (Jay) BONSTINGL, Plaintiff-Appellant,
v.
MARYLAND BANK, N.A.; Visa USA Inc.; Visa International
Inc., Defendants- Appellees.
 No. 87-3110.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 4, 1988.
Decided: Feb. 22, 1988.
 
 Joel Marc Abramson (Talkin & Abramson, on brief); Leonard Orman (Orman & Dilli, on brief), for appellant.
 Charles Padgett Goodell, Jr. (Richard M. Barnes; Semmes, Bowen & Semmes, on brief); Donald E. Sharpe (M. Rosewin Sweeney; Piper & Marbury, on brief), for appellees.
 Before MURNAGHAN, SPROUSE and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 John Joseph Bonstingl exceeded his VISA credit limit when he purchased two gold chains one Thursday evening from a merchant in Santorini, Greece. The fact of the excess is not contested. When the charge was refused on behalf of VISA, the merchant (unhappy because Bonstingl had said he was staying in town for a week and in fact was about to reboard his cruise ship and leave the area) filed a criminal complaint that led to Bonstingl's arrest in Piraeus on Friday morning for counterfeiting and criminal fraud. Maryland Bank N.A., one of the defendants, sent two telexes (the first containing an error as to the name of the credit card company involved) vouching for Bonstingl's good standing as a customer; both arrived on the same day, Monday. More importantly, on Friday the bank voluntarily raised Bonstingl's credit limit so the purchase would be covered; when the merchant reapplied for approval of the charge on Tuesday, the credit was authorized. The merchant immediately notified the local police that he was dropping his complaint, and Bonstingl was released by Greek authorities within about two hours. The record clearly establishes that the merchant's withdrawal of the criminal charges led to Bonstingl's release and that the bank's two telexes, the correct one and the incorrect one, played no part.
 
 
 2
 Bonstingl has sued VISA and Maryland Bank in tort for a total of $42 million plus costs for his suffering. The district court held that under Maryland choice of law rules, Greek law applied. After requesting and receiving expressions from the parties as to the state of Greek law and its applicability in the circumstances, the district judge granted the defendants' request for summary judgment on Count I (which alleged breach of duty to exercise reasonable care in handling of Bonstingl's account), and dismissed Count II (which alleged breach of a duty to warn Bonstingl about the consequences of exceeding a credit limit while in Greece) for failure to state a claim.
 
 
 3
 In granting summary judgment for the defendants on Count I, the district judge relied on the clear lack of causation linking the Maryland Bank's actions with the unpleasant vicissitudes in Greece. The district judge, so far as Count II was concerned, also concluded there was no duty to warn Bonstingl that his antics in Greece might lead to incarceration and other possibly unpleasant consequences.
 
 
 4
 Maryland continues to adhere to the doctrine of lex loci delicti, and therefore applies the law of the place of the injury to tort claims. Hauch v. Connor, 295 Md. 120, 123, 453 A.2d 1207, 1209 (1983) ("The rule of lex loci delicti is well established in Maryland."). Maryland does not apply the doctrine of renvoi, so Bonstingl's arguments in favor of looking to the conflicts law of Greece and thereby applying Maryland tort law are pointless. See Polqlase v. Greyhound Lines, Inc., 401 F.Supp. 335, 337 (D.Md.1975) (Kaufman, J.). Bonstingl's arguments that Maryland law should govern his tort claims are therefore completely groundless. Because the injury (Bonstingl's incarceration) occurred in Greece, under Maryland law the law of Greece must be applied to Bonstingl's tort claims. See Johnson v. Oroweat Foods Co., 785 F.2d 503, 511 (4th Cir.1986).
 
 
 5
 The question presented by Count I is whether, under Greek law, the error committed in sending the first telex (citing Bonstingl's Mastercard account instead of his VISA account) constituted actionable negligence. The district court ruled that under Greek law, there was no proximate cause because there was no causal connection between the erroneous telex and Bonstingl's continued detention by Greek authorities. Both the correct and incorrect telexes were received the same day, Monday; and in any event, the telexes appear to have been irrelevant to the Greek authorities. The action that resulted in Bonstingl's release was the Bank's voluntary increase of his credit limit to cover the purchase, which led to the Greek merchant's satisfaction and decision not to pursue charges against Bonstingl. Bonstingl failed to submit any affidavits or other material tending to demonstrate a genuine issue of material fact, as required by Fed.R.Civ.P. 56(e) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986), so summary judgment on Count I was proper.
 
 
 6
 Under Fed.R.Civ.P. 44.1, the district judge had to determine pertinent Greek law and then apply that law to the facts on summary judgment. There is no merit in Bonstingl's argument that the district judge erred in his determination of Greek law. He received submissions from three Greek law experts--a Greek attorney retained by Bonstingl, a Greek attorney retained by the defendants, and a professor of law at Tulane. One disagreed with the other two on how Greek law would be applied in this case, but did not differ on the basic elements of Greek tort law. The experts agreed that the Greek definition of "tort" is set forth in Article 914 of the Greek Civil Code: "A person who through his fault has contrary to law caused damage to another person is bound to repair it." (Emphasis added.) As Bonstingl concedes, the telexes simply did not have any effect on his incarceration.
 
 
 7
 In Count II, Bonstingl alleged that the defendants had a duty to warn him of the possible dire consequences of exceeding his credit limit in Greece, and that they breached that duty by not warning him. The district judge determined that no such duty to warn exists under Greek law.
 
 
 8
 It is important to distinguish between overcharging and fraud. Under Greek law, the mere improper use of a credit card is not a criminal offense. Here, Bonstingl was arrested for fraud and counterfeiting, because the merchant believed he had been defrauded (Bonstingl told him he would be in town for a week, and then sailed away a half hour later with the merchandise). Greece has the same rule as the United States, that ignorance of the law is no excuse. The allegation that "lack of warning on the part of the Bank ... had a tendency to create and did in fact create in Mr. Bonstingl the erroneous impression that he could freely exceed his credit limit without any criminal repercussions" is ludicrous. Even if that is true, it does not create a duty on the part of the defendants under Greek law or under Maryland law. Bonstingl's VISA contract clearly states that he has a credit limit, that charges over that limit may not be honored, and that any previous extensions of the credit limit cannot be counted on in the future. It is elementary that a person who purchases goods without paying for them (whether through a rubber check, a forged instrument, or a credit card without enough credit available) risks civil and criminal penalties, whether in the United States or in Greece. Bonstingl has nobody to blame but himself for his unfortunate incarceration. The district judge was correct in dismissing Count II for failure to state a claim on which relief can be granted, because the defendants had no duty to warn Bonstingl that he could be arrested in Greece for fraud if he purchased goods with a worthless (over the credit limit) credit card.
 
 
 9
 AFFIRMED.